**JACKSON COUNTY BOARD OF ELECTION COMMISSIONERS, et al., Respondent,**

**City of Independence, Respondent,**

**William Snyder, Respondent,**

v.

**Renee PALUKA, et al., Respondent,**

**Paul Levota, Appellant,**

**Missouri Ethics Commission, Appellant,**

**Nos. WD 58196, WD 58209.**

Missouri Court of Appeals, Western District.

Submitted March 6, 2000.

Decided March 10, 2000.

Jane A. Rackers, Huyen T. Pham, Asst. Attys. Gen., Jefferson City, for appellant Missouri Ethics Commission.

Douglas J. Patterson, Leawood, KS, for appellant Paul Levota.

Philip F. Cardarella, Kansas City, for respondents Renee Paluka and William Snyder.

Russell C. Purvis, Kansas City, for respondent William Snyder.

Before JAMES M. SMART, Jr., P.J., LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

SMART, Judge.

This expedited appeal arises out of a declaratory judgment action filed by the Jackson County Board of Election Commissioners and the City of Independence to resolve a ballot issue related to the April 4, 2000, city elections. The case concerns the notice to be provided to candidates for municipal office as to their statutory obligation to file personal financial interest statements pursuant to § 105.487 RSMo 1999 Supp.

On April 4, 2000, the Jackson County Board of Election Commissioners will conduct a general election which will include contests for seats on the City Council of the City of Independence, Missouri. William G. Snyder is currently a candidate for District 4 of the City Council. Renee Paluka is a candidate for District 3 of the council. Under §§ 105.483 to 105.492 RSMo 1994, Snyder and Paluka, along with the other candidates for Independence City Council, were required to file with the Missouri Ethics Commission personal financial disclosure statements on or before December 8, 1999, to avoid late filing fees, and on or before December 15, 1999, to avoid being removed from the ballot.[1]

Following the initial deadline, the Ethics Commission noticed that Snyder and Paluka failed to file their personal financial disclosure statements. The Commission sent separate letters to them on December 13, 1999, advising them that they missed the initial deadline, and warning them of the penalty of removal from the ballot if they should fail to file by December 15, 1999. Paluka and Snyder received the correspondence, including a blank form, from the Ethics Commission on December 15, 1999, which was the final deadline. Paluka and Snyder each completed the financial disclosure statement form and transmitted their forms by fax. The fax in each case was received in the office of the

1. Individuals required to file under Chapter 105, RSMo, are described in § 105.483 RSMo as follows: * * *

 11. Each elected official, candidate for elective office ... of each political subdivision with an annual operating budget in excess of one million dollars ... unless the political subdivision adopts an ordinance, order or resolution pursuant to subsection 4 of section 105.485;

It is stipulated that the City of Independence does not have an ordinance, order or resolution pursuant to subsection 4 of section 105.485.

Ethics Commission after 10:30 p.m. on December 15.

On December 22, 1999, the Executive Director of the Ethics Commission, Charles Lamb, notified the city clerk by letter that Snyder and Paluka did not timely file their financial interest statements as required by § 105.492 RSMo and accordingly were disqualified from ballot participation. Snyder and Paluka protested. On December 28, 1999, the Jackson County Board of Election Commissioners filed a declaratory judgment action seeking a determination by the Circuit Court of Jackson County as to whether Snyder, who was a candidate on the primary, was disqualified, and whether the election board was obligated to remove his name from the ballot. The election board named as defendants the City of Independence, the Ethics Commission, Snyder, and Snyder's opponents in the February 8, 2000, primary election. The City of Independence also sought declaratory relief concerning Paluka, who was a candidate for the general election, but was not required to participate in the primary. A hearing was conducted on January 4, 2000, and on January 6, 2000, the court ruled summarily that Snyder's and Paluka's names should remain on the ballots. The Ethics Commission and Paluka's ballot opponent, Paul Levota, appeal.

### The Commission's Standing

The Ethics Commission and Levota contend on appeal that the circuit court erred in determining that the names must remain on the ballot. In response, Paluka and Snyder assert first of all that the Ethics Commission is without standing to appeal the judgment of the trial court. We turn first to the standing issue.

■ Paluka and Snyder contend that the Ethics Commission did not file a cross-petition in the trial court for declaratory relief, and point out that the judgment does not require that the Ethics Commission engage in any act or refrain from any particular action. Although it is true that the Ethics Commission did not denominate its responsive pleadings as cross-petitions for declaratory relief, we note that the Ethics Commission did nevertheless ask, in the prayer portion of its answers, that the trial court rule that Snyder and Paluka are excluded from the ballot. Because this was an action for declaratory relief, the petitions of the Election Board and the City of Independence placed all aspects of the matter before the court. We are provided no authority indicating that a defendant in a declaratory judgment action is required to formally denominate its pleading as a cross-petition in order to argue for a particular result, especially when the petitions for declaratory relief set forth the position of that defendant. Therefore, we conclude that the Ethics Commission did sufficiently ask for relief in the trial court.

■ Snyder and Paluka also contend that even if the Ethics Commission did ask for relief below, it is not an aggrieved party because the trial court's order does not direct the Ethics Commission to do anything or to refrain from any action. The court's order, they note, is instead directed at the election authorities.

■ The right of appeal is created by statute; there is no right to an appeal without underlying statutory authority. *United Labor Committee, Inc. v. Ashcroft,* 572 S.W.2d 446, 447 (Mo. banc 1978). Section 512.020 RSMo 1994 provides that a party aggrieved by any judgment of a trial court may appeal, subject to certain limitations. A party who has not been aggrieved by a judgment has no right or standing to appeal. *Bond v. California Compensation and Fire Co.,* 963 S.W.2d 692, 696 (Mo.App.1998). Generally, for a party to be considered aggrieved, the judgment in question must "operate[] prejudicially and directly on his personal or property rights or interests." *Shelter Mut. Ins. Co. v. Briggs,* 793 S.W.2d 862, 863 (Mo. banc 1990). "[A]s used in § 512.020, 'aggrieved' means 'suffering from an infringement or denial of legal

rights'." *Government Employees Ins. Co. (GEICO) v. Clenny*, 752 S.W.2d 66, 68 (Mo.App.1988) (quoting *Farrell v. DeClue*, 382 S.W.2d 462, 466 (Mo.App.1964)).

The Ethics Commission argues that the aggrievement requirement is not exactly the same for a state agency as for a private party, because a state agency does not have personal or property rights or interests but may have a statutorily created legal interest requiring protection. The Commission points out that in *Missouri Health Facilities Review Comm. v. Administrative Hearing Comm'n*, 700 S.W.2d 445 (Mo. banc 1985), the Health Facilities Review Committee received an adverse decision from the Administrative Hearing Commission. *Id.* at 448. The Health Facilities Review Committee's standing was challenged on appeal for reasons similar to those asserted in this case. The Missouri Supreme Court held that the Committee had standing because, "MHFRC is a policy-making agency in the field of health care and it has an interest in vindicating and upholding its official acts and procedures." *Id.*

The standing of the Labor and Industrial Relations Commission to appeal as an aggrieved party was addressed in *Dubinsky Brothers, Inc. v. Industrial Commission of Missouri*, 373 S.W.2d 9 (Mo. banc 1963). In that case, which was an appeal of a decision in an unemployment compensation case, both the Division of Employment Security and the Commission appealed the trial court reversal of orders allowing benefits, even though the claimant did not appeal. *Id.* at 11. The court held that both the Commission and the Division had a direct legal interest which gave them an independent right of appeal. *Id.* at 14.

This court followed *Dubinsky* in *Missouri Div. of Employment Sec. v. Labor and Indus. Relations Comm'n*, 739 S.W.2d 747 (Mo.App.1987), recognizing the right of the Commission to appeal where its decision had been reversed by the circuit court, even though the claimant did not appeal and the Division supported the decision of the circuit court. *Id.* at 749. While the position of the Labor and Industrial Relations Commission is distinguishable from that of the Ethics Commission in that the Ethics Commission does not administer any funds, the Ethics Commission shares with the Commission a concern for the implementation of the laws it administers. The Ethics Commission also adjudicates certain matters within its statutorily created jurisdiction. § 105.955 RSMo.1999 Supp. We conclude that the position of the Ethics Commission is relatively similar to that of the Health Facilities Review Committee, which was allowed standing to appeal in *Missouri Health Facilities Review Comm. v. Administrative Hearing Comm'n*, 700 S.W.2d 445 (Mo. banc 1985). It appears also that § 105.997, which authorizes the attorney general to represent the Ethics Commission in state and federal appellate courts, contemplates the possibility of the Ethics Commission appealing trial court rulings related to enforcement issues. Applying these authorities here, we conclude that the Commission is an aggrieved party. The motions of Snyder and Paluka to dismiss the appeal of the Missouri Ethics Commission, taken with the case, are denied.

### Standard of Review

We will affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The facts were stipulated in the trial court, so the decision of the trial court was a decision of law. We review issues of law *de novo*. Accordingly, we determine whether the trial court correctly applied the law to the facts.

### Access to the Ballot

Chapter 105 of the Missouri Statutes establishes the Missouri Ethics Commission and prescribes the duties of public

officers and candidates with regard to financial disclosure. The evident purpose of the statutory scheme is to provide information to the public concerning the financial interests of public officers who may be influenced in their official duties by financial interests.

 In defense of the trial court ruling, respondents Snyder and Paluka claim, *inter alia*, that the statutory scheme in question, as applied to them in this case, violates their constitutional rights under the First and Fourteenth Amendments of the United States Constitution. Snyder and Paluka are correct that to the extent that requirements of filing personal financial disclosure statements apply to candidates for public office, they are a regulation of access to the ballot. As a matter of constitutional law, any state law regulating access to the ballot must be shown by the state to be necessary to serve a compelling interest. *Illinois Elections Board v. Socialist Workers Party,* 440 U.S. 173, 184–85, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979). Also, when there is a compelling interest, the state must utilize the least restrictive means in achieving its ends. *Id.* at 185–86, 99 S.Ct. 983. The court will apply strict scrutiny in determining whether a regulation involving right of access to the ballot is constitutional. *State ex rel. Coker–Garcia v. Blunt,* 849 S.W.2d 81 (Mo.App.1993).

 The Missouri Supreme Court has exclusive jurisdiction of cases involving the constitutionality of a state law. Art. V § 3, Mo. Const. *See State v. Ralls,* 1999 WL 382906 (Mo.App.1999). This court has no jurisdiction to decide the constitutionality of the statutory scheme. Were it necessary that the constitutionality of the statutes be adjudicated, we would transfer this case. However, the courts should refrain from deciding constitutional issues when the case can be resolved without reaching those issues. *State ex rel. Williams v. Marsh,* 626 S.W.2d 223, 227 (Mo. banc 1982).

The trial court did not address the constitutional claims in its decision. We infer that the court based its decision on the notice requirement of § 105.487. Because resolution of the issue as to the adequacy of notice is dispositive of this case, it is unnecessary to reach the constitutional issues and we accordingly retain jurisdiction.

### The Notice Requirement

 Section 105.487(1) states, with regard to the requirement that candidates for public office file a personal financial disclosure statement:

> The appropriate election authority shall provide to the candidate at the time of filing for election written notice of the candidate's obligation to file pursuant to sections 105.483 to 105.492 and the candidate shall sign a statement acknowledging receipt of such notice; …

The Ethics Commission and Levota argue on appeal that the trial court erred in allowing Snyder and Paluka to remain on the ballot because they were given adequate notice by the city clerk of their obligation to file their disclosure statements. The appellants claim that the candidates were given abundant notice because, at the time the candidates filed for election, they were provided with a book setting forth a summary of the applicable provisions of Chapters 105 and 130 of the Missouri statutes, including the provisions related to their obligation to file their disclosure statements. Snyder and Paluka, in response, contend this was not the kind of notice intended by § 105.487.

 The issue is one of statutory construction. In construing a statute, we seek the plain and ordinary meaning of the statutory language, absent statutory definition of that language. *Moon Shadow, Inc. v. Director of Revenue,* 945 S.W.2d 436, 437 (Mo. banc 1997). We are guided by the legislature's apparent purpose in enacting the language in question. *Div. Of Employment Sec. v. Taney County Dist. R–III,* 922 S.W.2d 391, 393 (Mo. banc

1996). We will consider the particular language in the context of the entire statutory scheme on the same subject in order to discern legislative intent. *See Phillips v. American Motorist Ins. Co.*, 996 S.W.2d 584 (Mo.App.1999).

"The word 'notice' is not a technical word, and while it can have various meanings, yet the meaning to be given it by the courts is to be controlled largely by the context and by the purpose of the enactment." *Miller v. Prough*, 203 Mo. App. 413, 221 S.W. 159 (1920). Notice may be either express or implied. *Crane v. Liberty Foundry*, 322 Mo. 592, 17 S.W.2d 945, 957 (1929). Express notice is that kind of actual notice which consists of "knowledge brought personally home." *Buckley v. Coe*, 385 S.W.2d 354, 358 (Mo. App.1964) (quoting 66 C.J.S. *Notice* § 5). Implied notice is knowledge implied from surrounding facts and circumstances, so as to hold one to have known that which he could have discovered by the exercise of ordinary care. *Lamke v. Lynn*, 680 S.W.2d 285, 288 (Mo.App.1984).

As we review Chapter 105 in its entirety, we notice that the purpose of the personal financial disclosure requirement is to make available to the public financial information concerning possible conflicts of interest, not to provide a mechanism to exclude from public office those who are less informed or less diligent. The incumbent candidates and office holders are required to file their annual personal financial disclosure statement, but if they fail to file in timely fashion, they are to receive "notice from the commission." Their pay and remuneration shall be withheld until they file the statement. And, if they do not file the required statement within 30 days *after* such notice, they "shall be subject to suspension from office in the manner otherwise provided by law or the constitution" § 105.492.1 RSMo 1999 Supp. It is obvious that the reason that incumbents have an opportunity to cure their default, after notice of default, is to allow abundant opportunity for compliance. Ample lati-

tude is allowed for inadvertent or ignorant failure to comply.

In this case, the General Assembly has specifically required that the candidate acknowledge receipt of notice of the obligation to file the disclosure statement. This requirement of the acknowledgement confirms that the General Assembly intended for the candidate to receive express notice of the duty to file the statement. The fact that the statute does not specify that candidates have an opportunity to cure the default after notice of default makes it even more evident that clearly communicated express notice was contemplated. Moreover, the other provisions in Chapter 105 involving the communication of notice all appear on their face to involve express notice. For instance, in addition to § 105.492.1 mentioned above, which mentions the provision of "notice" before an office holder is subject to suspension, another statute provides that when a candidate has failed to file, the Commission shall "notify" the filing official that the candidate is disqualified. § 105.492.2. We doubt that the legislature intended that the Ethics Commission could satisfy the duty of notification in either case simply by mailing to the pertinent officer a document constituting a compilation of the names of all the individuals who had filed their disclosure statements. We believe the General Assembly intended express, direct notice be provided in each case.

So, too, here we conclude that the General Assembly provided for notice and for enforcement mechanisms for the purpose of ensuring that persons required to file do in fact file. Statutes are presumed to be constitutional, and are to be construed in a way which is consistent with their constitutionality. *Savannah R–III School District v. Public School Retirement System*, 950 S.W.2d 854, 858 (Mo. banc 1997). Accordingly, we must regard the threat of removal from the ballot, a severe penalty for non-compliance, as created to ensure compliance, not to eliminate

from the ballot the uninitiated "outsider" candidate who is not part of the existing incumbency. *See Anderson v. Celebrezze,* 460 U.S. 780, 787–790, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). Both the language of the statute and the purpose of the notice requirement demonstrate that the legislature intended that the filing officer provide express written notice, informing the candidate of the duty to file the financial disclosure statement.

### The Notice Given

As noted, § 105.487 requires that the "appropriate election authority" provide the candidate with "written notice of the candidate's obligation to file pursuant to §§ 105.483 to 105.492...." At the time Snyder and Paluka filed their declarations of candidacy, the Independence City Clerk gave each of them a 26 page, 8½" × 11," single spaced book entitled "Summary of Conflict of Interest and Campaign Finance Laws, Chapters 105 and 130, RSMo." The summary book was prepared by the Missouri Ethics Commission, pursuant to § 105.973, RSMo 1999 Supp. That statute provides that the Ethics Commission shall print and make available a "summary of all laws over which the Commission has enforcement powers pursuant to Chapter 105 and Chapter 130, RSMo." The statute says the summary "shall be in plain English" and compiled to put individuals "on notice" of such laws.

The statute also provides that candidates shall sign a statement verifying receipt of the summary when filing for office. When Paluka and Snyder received this book, the city clerk also gave them the following acknowledgement to sign:

I acknowledge that, as required by statute, I have received a summary of all laws over which the Missouri Ethics Commission has enforcement powers pursuant to Chapter 105, RSMo., and Chapter 130, RSMo.

**2.** This is a paraphrase of § 105.483(11) RSMo.1999 Supp. The booklet contains no

Included in the book are summaries of laws related to conflicts of interest, lobbying, personal financial disclosure, complaints, campaign finance laws, reporting exemption or rejection, committee organization and termination, record keeping, and reporting. Among the variety of items discussed in the book are certain portions dealing with the matter of personal financial disclosure statements.

As to who is required to file such a statement, on page 10, the summary book states:

Candidates for office in a political subdivision with an annual operating budget exceeding one million dollars are required to file a personal financial disclosure statement if the political subdivision does not have a policy in place pertaining to conflicts of interest. If the political subdivision does have a policy in place, you may be required to file a personal financial disclosure statement depending on the office your are seeking.[2]

As to when a financial disclosure statement, if required, is to be filed, the summary book states at page 11:

There are three possible filing deadlines for individuals required to file a personal financial disclosure statement....

3. If you are a candidate that is required to file a personal financial disclosure statement, then your deadline for filing a personal financial disclosure statement is fourteen (14) days from the closing date of filing for candidacy. Your personal financial disclosure statement must be received in our office no later than 5:00 p.m. on the fourteenth day following the closing date for filing for candidacy, or postmarked the day previous to the deadline to be considered timely filed. The time period covered by the statement should be the twelve months

information as to whether the City of Independence has a conflict of interest policy.

previous to the closing date for filing for candidacy. . . . [3]

The summary book also, at page 16, includes a chart which sets forth the closing dates for filing for candidacy with regard to the different statutory election dates, and then specifies the initial deadline (the 14–day deadline) mentioned at page 11 of the summary. The chart also includes a column for the designation of a deadline which is 21 days from the closing date of filing for candidacy.[4] On the same page as the chart, the book states:

* **FAILURE TO FILE BY FOURTEEN DAY DEADLINE MAY RESULT IN A LATE FILING FEE OF $10 PER DAY.**
** **FAILURE TO FILE BY TWENTY–ONE DAY DEADLINE MAY RESULT IN REMOVAL FROM THE BALLOT.**

On page 13 of the summary book, there is a section under the heading, "What are the Penalties For Filing My Personal Financial Disclosure Statement After the Filing Deadline?" The paragraph following that heading states:

Penalties for failure to file a personal financial disclosure statement may include late filing fees, withholding of compensation (salary) or remuneration, removal from office, or removal from the ballot. There are no extensions granted by the Missouri Ethics Commission regarding personal financial disclosure statement deadlines. . . .

The subsequent paragraphs state as follows:

If an individual is required to file a personal financial disclosure statement because he or she is a candidate and that person fails to meet the filing deadline, the Missouri Ethics Commission is

required by law to inform the official who accepted the candidate filing that the candidate is disqualified. The individual who accepted the filing is the person who will remove the candidate from the ballot.

For further information regarding penalties for untimely filing or failure to file a personal financial disclosure statement, please refer to Sections 105.492 and 105.963.3, RSMo.

Paluka and Snyder deny that the 26 page book compiled by the Missouri Ethics Commission constitutes the notice envisioned by the drafters of § 105.487. They argue that the language of § 105.487 requires the provision of a separate, clear, concise, and specific notice. They argue that they should have been provided a written notice something like this:

You are hereby notified that you are required to file a financial disclosure statement pursuant to Section 105.483, et seq., with the Missouri Ethics Commission no later than 5:00 p.m. December 15, 1999. Failure to file will result in the removal of your name from the ballot.[5]

Paluka and Snyder say that the book prepared pursuant to § 105.973 was not the notice required under § 105.487; they say it was a "homework assignment" rather than direct explicit notification of their obligation to file their disclosure statements. Paluka and Snyder criticize the use of the book as a means of notice not because it contained too little, but because it contained too much, and, they say, what it does contain can be confusing. Intermingled with items pertinent to the disclosure statement, the book contains many other items not pertinent to the duty of candidates to file the disclosure statement.

---

**3.** This is a paraphrase of § 105.487.1.

**4.** The twenty-one day deadline is contained in § 105.492.2.

**5.** December 8 was the date by which the candidates began accumulating a daily penalty. December 15 was, of course, the deadline

of greatest significance because of the mandatory exclusion from the ballot. Paluka and Snyder do not quibble over the use of the word "will" instead of "may" in reference to removal from the ballot, although "will be removed" is a more accurate statement.

When it does address the financial disclosure requirement, the book's provisions applicable to candidates are often merged with provisions applicable to current office holders. In some instances, the information is somewhat indefinite. For instance, the candidate must refer to sources beyond the book to determine whether he or she is required to file. Also, the only prominent reference in the book to the 21 day deadline says that the candidate "may" be removed from the ballot, incorrectly implying some discretion in the enforcement of that provision.

Moreover, we note also that the candidates were not asked to sign separate acknowledgements of the two separate notifications required in accordance with § 105.487 and § 105.973. The city clerk, on providing the candidates with the summary book, did not comply with the requirement of § 105.487 of having the candidate acknowledge receipt of notice of the "obligation to file [the financial interest statement] under §§ 105.483 to 105.492." Instead, the clerk asked them only to sign an acknowledgement pursuant to § 105.973 that they "received a summary of all laws over which the Missouri Ethics Commission has enforcement powers pursuant to Chapter 105, RSMo, and Chapter 130, RSMo." Thus, instead of acknowledging receipt of notice of the obligation to file under §§ 105.483 to 105.492, and acknowledging receipt of a summary of the laws enforced by the Ethics Commission, they acknowledged only the latter.[6] Without the specific acknowledgement required by § 105.487, the candidates had only the book, with all of its different subjects and applications, as notice of their duty to file their personal financial disclosure statements.

The Ethics Commission and Levota respond to the above contentions with the argument that through the exercise of reasonable diligence the candidates could have discovered that they were required to file their disclosure statements. It is true that, by the exercise of reasonable diligence, Paluka and Snyder could have ferreted out from the provisions of the book sufficient information which would have put them "on notice" that they may have a duty to file the disclosure statement (page 10 of the booklet) and that, if they do have such a duty, they should file by December 15, 1999 (the chart at page 16), and that if they fail to file by the required date, the Ethics Commission is required to inform the election official that they are disqualified (page 14) and that they may face removal from the ballot (page 16). We agree that the candidates had a form of notice, but we do not find it clear that they had the express, direct written notice contemplated in § 105.487.

We agree with Paluka and Snyder that a clearly expressed written notice setting out the requirement, the deadline, and the dire consequences of failing to comply would have provided the kind of notice envisioned by the General Assembly. "A written notice should be clear, definite, explicit, and not ambiguous." 58 Am. Jur.2d Notice § 30. We are dealing here with the right to be a candidate for public office. The right to run for public office implicates not only the fundamental political rights of the candidate, but also the rights of the voters. *Williams v. Rhodes,* 393 U.S. 23, 30–31, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). We conclude that, in this context, § 105.487 required express, direct notice—"knowledge brought personally home." The concession by the Ethics Commission and Levota that some diligence must be employed to obtain the information in question is, in our view, tantamount to a concession that the candidates did not receive express, direct notice of their duty to file, which we believe was required by § 105.487. The appellants have

6. Section 105.487 was enacted in 1990, and § 105.973 enacted in 1997. It would be reasonable to assume that, because § 105.487 was not changed in 1997, the legislature intended these as separate notification requirements, and did not intend to subsume the first within the second.

not persuaded us that the summary book constituted the notice required by § 105.487, or that the book, together with the acknowledgement of receipt of the book, without a separate notice or acknowledgement as to the financial disclosure requirement, constituted the notice that the statute required that they receive from the city clerk at the time of filing for election.

### Conclusion

For the foregoing reasons, we affirm the judgment of the trial court directing that the names of the candidates remain on the ballot.[7]

LAURA DENVIR STITH and EDWIN H. SMITH, JJ., concur.

---

7. The motion of the Missouri Ethics Commission to stay distribution of absentee ballots pending appeal is denied.