Chief Charles COYNE, Respondent,

v.

Bernard F. EDWARDS, Jr., Appellant.

No. SC 93194.

Supreme Court of Missouri,
En Banc.

March 25, 2013.

Neil J. Bruntrager, Mary L. Bruntrager, Bruntrager & Billings PC, St. Louis, for Respondent.

Elbert A. Walton Jr., Metro Law Firm LLC, St. Louis, for Appellant.

Missouri Attorney General Chris Koster, Jonathan M. Hensley, Attorney General's office, Jefferson City, for Attorney General as Amicus.

LAURA DENVIR STITH, Judge.

Bernard Edwards appeals the trial court's judgment overruling his motions to dismiss and for directed verdict and entering judgment in favor of Chief Charles Coyne. Mr. Edwards argues that his name should not have been removed as candidate for the office of Director of Community Fire Protection District on the April 2013 general election ballot because Chief Coyne did not possess capacity or standing to bring this action, because Mr. Edwards did not receive adequate notice of his obligation to file a financial interest statement, and because the statutory financial interest statement notice requirements are invalid under the First and Fourteenth amendments to the United States Constitution. This Court affirms.

The Community Fire Board of Directors had standing and specifically authorized Chief Coyne to pursue any legal action necessary to remove Mr. Edwards' name from the April ballot, thereby vesting him with capacity to bring this action on its behalf. Mr. Edwards received adequate notice of the financial interest statement filing requirements, including written notice of the filing deadlines he acknowledged receiving on the day he filed for candidacy, as well as written notice received by him after he failed to timely file his statement and prior to the final date for late filing.

This Court also rejects Mr. Edwards' complaints that the statutory requirement that he be disqualified from seeking office if he fails to timely file a financial interest statement is subject to strict scrutiny and unconstitutionally denies him ballot access. The test for a claim regarding ballot access is examined to determine whether the law places an undue burden on the candidate; Mr. Edwards did not show that it was an undue burden to comply timely with the filing requirement of which he admittedly knew and with which he admittedly did comply, but in an untimely manner. Mr. Edwards' equal protection claim is also rejected. This Court rejects his premise that candidates for elective office who have not filed a financial interest statement should be treated as similarly

situated to elected officials who already have financial interest statements on file. Mr. Edwards' claim that he was not afforded due process also fails because he did not properly brief this argument and because he did not present support for either a facial or as-applied challenge to the statute. For all these reasons, the trial court did not err in overruling Mr. Edwards' motions to dismiss and for directed verdict and entering judgment in favor of Chief Coyne.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 11, 2012, Bernard Edwards filed a declaration of candidacy to run for the position of Director of Community Fire Protection District ("Community Fire") in the April 2, 2013, general municipal election. Community Fire is a political subdivision located in St. Louis County "organized and empowered" to supply fire protection and other emergency assistance. § 321.010, RSMo 2000.[1] Assistant Fire Chief James Conroy received Mr. Edwards' declaration of candidacy on behalf of the district.

Under section 105.483, "each elected official, candidate for elective office . . . and the general counsel . . . of each political subdivision with an annual operating budget in excess of one million dollars" must file a financial interest statement. A candidate for office who is required to file a financial interest statement must do so "no later than fourteen days after the close of filing at which the candidate seeks nomination or election" or be subject to a late fee. § 105.487; § 105.963, RSMo. Supp.2012. If a candidate for office does not file the financial interest statement "by the close of business on the twenty-first day after the last day for filing," then the candidate's name will be removed from the ballot. § 105.492.[2]

Community Fire has an annual operating budget in excess of one million dollars. Each elected official and candidate for elective office in Community Fire, therefore, must file a financial interest statement. When Mr. Edwards submitted his declaration of candidacy on December 11, 2012, he was given a copy of a "Notice to Candidate" form prepared by the Missouri Election Commission ("MEC"). A copy of the form is appended to this opinion. The form notified Mr. Edwards that he was required to file a financial statement pursuant to sections 105.483 to 105.492 in order to run for Director.[3]

As the last day of filing for the Community Fire election was January 15, 2013, pursuant to section 105.487 the financial interest statement was due 14 days later, on January 29, 2013. Accordingly, Part II, section II of the form, entitled "Part Two: Filing Status," instructed:

1. If PFD/Financial Interest Statement is not filed by 1/29/2013 (14 days after

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

2. Section 105.485, RSMo Supp.2012, sets forth the information candidates must provide in their personal financial statements. Among the information it requires is the name and address of each employer who paid the candidate income of one thousand dollars or more in the past year and the name, position and relationship of any direct relative who either works for the State of Missouri or is a lobbyist. Id.

3. Specifically, Part II, section 1 of the form states in relevant part: "The political subdivision does NOT have a conflict of interest ordinance on file with the Missouri Ethics Commission; therefore, the candidate is required to file pursuant to § 105.483 to § 105.492 RSMo." Under § 105.485.4, RSMo Supp.2012, if a political subdivision adopts its own method of disclosing potential conflicts of interest, then its officers and employees are excluded from the requirements in § 105.483 to § 105.492, RSMo.

filing closing date); *PENALTY:* Candidate will be assessed a minimum of **$10 per day late fee** for each day the report is late.

2. If PFD/Financial Interest Statement is not filed by 2/05/2013 (21 days after filing closing date); *PENALTY:* Candidate will be **disqualified as a candidate** and his/her name will be removed from the ballot.

Mr. Edwards signed his name at the bottom of the form, acknowledging that he had received the form as well as a separate "Guide to Ethics Law" booklet. Assistant Chief Conroy signed the form as a witness.

Mr. Edwards did not file his statement by January 29, 2013. The MEC sent him a letter the following day, advising him that it had not received his financial interest statement and that if he failed to file the statement by February 5, 2013, the MEC would notify Community Fire that his name must be removed from the April ballot.[4]

The MEC did not receive Mr. Edwards' financial interest statement until February 7, 2013. He had sent it by regular mail on February 5, 2013, the date it was required to be filed. Under section 105.487, a financial interest statement is considered timely even if received after the deadline for filing the statement so long as it is "postmarked not later than midnight of the day previous to the day designated for filing the statement." In order for Mr. Edwards' statement to be timely filed, a postmark of February 4, 2013, was necessary. Mr. Edwards' letter was postmarked February 5, 2013, the day he mailed it.

When the MEC determines that a candidate has failed to file his or her financial interest statement by the statutory deadline, it must notify the election official who accepted the candidate's declaration. § 105.492.2. Because Community Fire accepted Mr. Edwards' declaration of candidacy, the MEC sent it the notice of Mr. Edwards' disqualification. After receiving notice of a disqualification, the election official has until the 10th Tuesday prior to the election to notify the election authorities responsible for conducting the election of the disqualification. § 115.125, RSMo Supp.2012. A "late notification" of change can still be made to the authorities between the 10th and 6th Tuesdays prior to the election, however, so long as it is accompanied by a court order. *Id.*

January 22 was the 10th Tuesday prior to the April 2, 2013, general municipal election and March 26, 2013, the 6th Tuesday prior to that election. Because MEC's notice to Community Fire of Mr. Edwards' disqualification came after the 10th but prior to the 6th Tuesday before the April 2 general municipal election, the St. Louis County Board of Election Commissioners informed Community Fire, pursuant to section 115.125, that in order to remove Mr. Edwards' name from the ballot the request must be accompanied by a court order.

After receiving the MEC notification, the Community Fire Board of Directors authorized the filing of any legal actions necessary and appointed Fire Chief Charles Coyne to act on behalf of the Board. On February 13, 2013, Chief Coyne filed a petition requesting the St. Louis County circuit court enter an order

---

**4.** Under Missouri election laws, fire protection districts are "special districts" and candidates for election in the district file their declaration of candidacy directly with the district. §§ 115.013(26), RSMo Supp.2012; 115.127.5, RSMo Supp.2012. The district then notifies the election authorities responsible for conducting elections of the need for an election and the names of the candidates if there is more than one candidate for a particular office. §§ 115.134.1; 115.125, RSMo Supp.2012.

directing Mr. Edwards to show cause why his name should not be stricken from the April 2 ballot.

The court held a hearing on the order to show cause on February 15, 2013. Chief Coyne presented evidence on behalf of Community Fire showing that Mr. Edwards' financial interest statement had not been timely filed. Chief Coyne testified, without objection, that he was testifying in his representative capacity as Fire Chief for Community Fire. Mr. Edwards' counsel filed motions for dismissal and for a directed verdict alleging the unconstitutionality of the notice provisions, lack of capacity or standing of Chief Coyne to sue, and that the disqualification requirement violated his constitutional rights to ballot access, equal protection and due process. The court granted Chief Coyne leave to file the minutes of the Community Fire Board of Directors meeting during which the board authorized Chief Coyne to file any legal action necessary to have Mr. Edwards' name removed from the ballot. The trial court overruled the motions to dismiss and for directed verdict. Mr. Edwards chose not to present any evidence.

The trial court found that Mr. Edwards had not timely filed his financial interest statement and was disqualified from running for Director of Community Fire. He ordered that Mr. Edwards' name either be removed from the April 2 ballot or that the St. Louis County Board of Election Commissioners—the election authority responsible for conducting Community Fire elections—post signs at the applicable polling places advising voters that Mr. Edwards was disqualified and that any votes cast for him would not be counted or reported.

Mr. Edwards appealed. The court of appeals transferred this case to this Court pursuant to Mo. Const. art. V, sec. 11, as the validity of a statute is involved. This Court has jurisdiction. *Mo. Const. art. V, sec. 3.*

## II. STANDARD OF REVIEW

The "judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). "A statute is presumed to be constitutional and will not be invalidated unless it clearly and undoubtedly violates some constitutional provision and palpably affronts fundamental law embodied in the constitution." *State v. Faruqi,* 344 S.W.3d 193, 199 (Mo. banc 2011).

## III. ANALYSIS

### A. Chief Coyne, Acting for Community Fire, had Capacity and Standing

Mr. Edwards first argues that the trial court erred in overruling his motions to dismiss and for directed verdict and in entering judgment in favor of Chief Coyne "because the trial court was without jurisdiction over the subject matter." Mr. Edwards believes that the court lacked this subject matter jurisdiction because Chief Coyne was "without any capacity or standing to sue."

Mr. Edwards misapprehends subject matter jurisdiction. It "is not a matter of a state court's power over a person, but the court's authority to render a judgment in a particular category of case." *J.C.W. ex rel. Webb v. Wyciskalla,* 275 S.W.3d 249, 253 (Mo. banc 2009). It is unquestionable that circuit courts of this state have original jurisdiction over election cases such as the one presented here. *Mo. Const. art. V, sec. 14* ("[t]he circuit courts shall have original jurisdiction over all cases and matters, civil and criminal").

■ Although Mr. Edward's frames his argument as one involving subject matter jurisdiction, it appears that his complaint truly lies with Chief Coyne's "capacity" to bring the action against him. Section 105.492 states that if a candidate does not file a financial interest statement by the required deadline, and then does not do so in the seven day grace period the statute allows thereafter, "the [MEC] shall notify the official who accepted such candidate's declaration of candidacy that the candidate is disqualified." This officer is then to remove the candidate's name from the ballot. Mr. Edwards contends that this means that the specific individual who happened to accept his piece of paper declaring his candidacy must be the one in whose name suit is brought. Because Assistant Chief Conroy actually physically received the declaration of candidacy from him, only Assistant Chief Conroy, he argues, and not Chief Coyne, has the capacity to bring the action. Presumably, if another employee had taken the document from him, the argument would be made that suit must be filed in the name of that employee.

■ Mr. Edwards' argument ignores the fact that the Community Fire Board of Directors specifically authorized Chief Coyne to pursue any legal action necessary to remove Mr. Edwards' name from the April 2 ballot.[5] A governmental entity, like any corporate body, can act only through its officers and employees. *See Southers v. City of Farmington*, 263 S.W.3d 603, 609 (Mo. banc 2008). When Assistant Chief Conroy accepted Mr. Edwards' notice of candidacy, he was doing so as an officer of Community Fire. And Chief Coyne's testimony at trial clarified that when he filed the action against Mr. Edwards in the circuit court, he was doing so in his representative capacity as Fire Chief upon authorization by the board of directors. Because Mr. Edwards' delivered his notice of candidacy to an official with Community Fire, Chief Coyne, as an official with Community Fire, authorized to sue on its behalf, possesses the legal capacity to maintain this action against Mr. Edwards on behalf of Community Fire. Mr. Edwards cites no countervailing authority.

■■ In addition to claiming that Chief Coyne lacked the capacity to sue, Mr. Edwards claims that he lacked "standing" as well. He cites to no authority in support of this claim, merely reiterating that the

---

**5.** Mr. Edwards does correctly note that Chief Coyne's petition failed to allege capacity. Further, Mr. Edwards did raise lack of capacity of Community Fire to sue in his answer. But, his answer did not contend that Chief Coyne was not duly authorized by Community Fire to represent it, with the capacity to sue on its behalf if it was entitled to sue, and, therefore, waived that claim. *See Rule 55.13* ("When a person desires to raise an issue as to ... the authority of a party to sue or be sued in a representative capacity, the person shall do so by specific negative averment.")

In any event, the Chief testified, without objection, that he was before the trial court in his representative capacity as fire chief for Community Fire. At the close of the evidence, Chief Coyne requested and the trial court permitted him to supplement the record with the minutes of the Community Fire board meeting, the meeting in which the Board authorized Chief Coyne to act on its behalf in any litigation involving Mr. Edwards' candidacy. This the trial court was empowered to do. *In re Estate of Mapes*, 738 S.W.2d 853, 855 (Mo. banc 1987) ("Generally, the decision to allow a party to reopen is within the sound discretion of the trial court"). Further, under Rule 55.33, "amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time" or by the court without motion. *McNear v. Rhoades*, 992 S.W.2d 877, 881 (Mo.App.1999) ("We hold that it was permissible for the trial court to order the pleadings amended to conform to the evidence *sua sponte*, providing it could have done so by motion of the parties.")

only person with "standing" to sue was Assistant Chief Conroy, the official who received his declaration of candidacy. Standing is "a concept used to ascertain if a party is sufficiently affected by the conduct complained of in the suit, so as to insure that a justiciable controversy is before the court." *City of Wellston v. SBC Communications, Inc.*, 203 S.W.3d 189, 193 (Mo. banc 2006).

As previously noted, when Community Fire was notified by the MEC that a candidate for Community Fire office had been disqualified, it then was required to have that candidate's name removed from the ballot. As it is the St. Louis County Board of Election Commissioners that conducts Community Fire's elections, it is the Election Board that prepares the ballots. Community Fire, therefore, was required to notify the Election Board of the need to remove Mr. Edwards' name.

MEC's notice of Mr. Edwards' disqualification to Community Fire did not come until February 11, the Monday prior to the 7th Tuesday preceding the election. Because this fell within the "late notification" period under section 115.125, Community Fire's notification had to be accompanied by a court order directing removal of the candidate's name from the ballot. Community Fire, therefore, is given statutory authority to pursue this action in order to have Mr. Edwards' name removed from the ballot. Moreover, the person elected Director will direct Community Fire. It is "sufficiently affected" by Mr. Edwards' failure to timely file his financial interest statement and possesses the requisite standing to bring this action.[6]

### B. Adequate Notice Provided

In his second point on appeal, Mr. Edwards' argues that the trial court erred in overruling his motions to dismiss and for directed verdict and in entering judgment in favor of Chief Coyne "because the trial court was without jurisdiction over the subject matter" in that the "notice to candidate" form did not provide him with adequate notice of the filing deadlines. As previously explained, trial courts have subject matter jurisdiction over all matters, civil and criminal. *Mo. Const. art. V, sec. 14.* See *Wyciskalla*, 275 S.W.3d at 253. Whether or not notice was constitutionally adequate is irrelevant to the trial court's subject matter jurisdiction.

Disregarding Mr. Edwards' erroneous subject matter jurisdiction claim, the facts indicate that he indeed did receive adequate notice of the dates by which the financial interest statement was due. Section 105.487(1) states, with regard to the requirement that candidates for public office file a financial interest statement:

> The appropriate election authority shall provide to the candidate at the time of filing for election written notice of the candidate's obligation to file pursuant to sections 105.483 to 105.492 and the candidate shall sign a statement acknowledging receipt of such notice; . . .

The notice of candidacy form given to Mr. Edwards by Community Fire expressly stated that his financial interest statement was due by 1/29/2013 or he would be assessed a $10 per day late fee and that if he did not file the statement by 2/05/2013, his name would be removed from the ballot. See *Appendix A*. Mr. Edwards both initialed and signed the form, acknowledging that he had been apprised of the filing deadlines. Mr. Edwards does not dispute that he was made aware of the

---

**6.** As noted, Chief Coyne had capacity to bring the action on behalf of Community Fire, which had standing.

filing dates, rather he contends that he should have been advised that if he chose to mail his statement, it must be postmarked by midnight the day before the due date.

Mr. Edwards relies on *Jackson Cnty. Bd. Of Election Comm'rs v. Paluka,* 13 S.W.3d 684 (Mo.App.2000). That case held that the city clerk did not provide two candidates with adequate notice of their obligation to file financial interest statements. The two candidates in *Paluka* were not informed of the specific deadlines they had to meet; they merely were given a book summarizing the generally applicable election statutes and had to puzzle out these dates by examining the provided statutes. The court found that the clerk should have provided each candidate with "a separate notice or acknowledgement as to the financial disclosure requirement." *Id.* at 694.

Community Fire did provide Mr. Edwards with a separate "notice to candidate" form that specifically advised Mr. Edwards that he needed to file a financial interest statement and told him the dates by which he must do so. He initialed the form. He admittedly received the notice that he had missed the January 29, 2013, filing date and knew that he had to file on or before February 5, 2013, in order not to miss the final filing deadline. He nonetheless chose not to personally file the document or to otherwise see that it was filed by the deadline, but instead to mail it by the deadline. Nothing in the notice misled him into believing mailing by the filing deadline was sufficient to comply with the statute. Mr. Edwards' cites to no authority that requires candidates be provided with information regarding which mailbox rules, if any, may apply. It was up to him to file by an acceptable method.

## C. Constitutional Issues

In his final point, Mr. Edwards argues that sections 105.487 and 105.492 are unconstitutional under the First and Fourteenth Amendments of the United States Constitution because they "denied [him] ballot access," equal protection and due process of law.

### i. Ballot Access

Mr. Edwards claims that section 105.492 violates his right to freely access the ballot in violation the First and Fourteenth amendments to the United States Constitution. In support, he argues that the requirement that he be disqualified if he fails to file the financial interest statement within 21 days after the deadline for filing a declaration of candidacy is unreasonable in that it does "not give a candidate a reasonable amount of time to cure" filing defaults. He argues that a less restrictive deadline would be adequate to allow the public time to obtain and review candidate disclosures prior to voting.

Mr. Edwards asserted in his answer that the right to ballot access is a fundamental right subject to strict scrutiny. He is incorrect. "A candidate's access to the ballot or the right to run for office is not a 'fundamental right.' " *State v. Young,* 362 S.W.3d 386, 397 (Mo. banc 2012); *accord Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982). And when a statute does not impinge upon a fundamental right, the challenger normally must demonstrate that the statute in question bears no rational relationship to a legitimate state interest. *See Missouri Prosecuting Attorneys & Circuit Attorneys Ret. Sys. v. Pemiscot Cnty.,* 256 S.W.3d 98, 102 (Mo. banc 2008) (applying rational basis test to challenge of statute providing for compensation to prosecuting attorneys).

Mr. Edwards did not contend in his answer or in his motion to dismiss that

the notice provisions were without rational basis in support of his ballot access claim,[7] and this Court affirms that they are valid under that standard. The financial statement filing requirements are valid under the rational basis test if they bear some rational relationship to a legitimate state purpose. *Id.* There are a number of rational and plausible reasons why the Missouri legislature may have chosen to enact a statute that mandated a candidate submit a personal financial interest statement within 21 days of the close of the candidacy filing period or else have his or her name removed from the ballot.

■■■■ The purpose of the financial disclosure law "is to provide information to the public concerning the financial interests of public officers who may be influenced in their official duties by financial interests." *Paluka*, 13 S.W.3d at 689. The state has a legitimate interest is making this information available to voters a reasonable time in advance of an election. "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). The filing deadlines provide a sensible enforcement mechanism to ensure that candidates do file these disclosures and to ensure that the filing is conducted in an organized fashion that provides adequate time for review by the public.

Section 105.487 provided Mr. Edwards two weeks to file his financial interest statement and he was provided with sufficient notice of this requirement. Even when he failed to file his statement within the two-week deadline, he enjoyed the benefit of a second deadline a week later. This extra time provided Mr. Edwards with more than ample opportunity to rectify his failure to timely file. Mr. Edwards does not claim he did not know of the deadlines. In fact, he signed a sheet providing him with those dates, and he received a notice that he had missed the first deadline. Nonetheless he chose not to place the statement on file by the 21st day. It is only after Mr. Edwards did not comply with this second filing deadline that the statute provides for his disqualification and removal. Mr. Edwards has not demonstrated that these provisions of sections 105.487 and 105.492 unconstitutionally burden his ballot access.

### ii. Equal Protection

■■■ Mr. Edwards claims that the same notice requirements that deny him ballot access also violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. That clause prohibits states from denying any person within its jurisdiction equal protection of the laws. *See U.S. Const. amend. XIV.* It requires that the laws of a state must treat similarly situated individuals in the same manner. *Cooper v. Missouri Bd. of Prob. & Parole*, 866 S.W.2d 135, 137 (Mo. banc 1993).

Mr. Edwards argues that section 105.492 denies him equal protection of the

---

**7.** Although not cited by Mr. Edwards, this Court notes that courts evaluating barriers to candidate ballot access have given a more vigorous level of scrutiny in two instances: (1) when ballot restrictions burden those of lower economic status, and (2) when ballot restrictions impose burdens on new or small political parties or independent candidates. *Clements*, 457 U.S. at 964, 102 S.Ct. 2836. The provisions of sections 105.487 and 105.492 challenged in this case do not contain any classification that imposes special burdens on minority political parties or independent candidates. Neither do they involve either filing fees or restrictions that burden those of lower economic status.

laws because it applies unequally to candidates for public office as compared to elected public office holders and employees of the state.

The financial interest statement filing requirement set out in section 105.483, et. seq., requires both candidates and numerous other state officials and employees, including "persons holding an elective office" such as the Director of Community Fire, to file financial interest statements. Elected officials must file a statement within 30 days of appointment to office and annually thereafter. § 105.487. Section 105.492 provides that the pay of an elected official who fails to file by the due date will be withheld until the statement is filed. If the elected official fails to file within 30 days of receiving notice from the commission, the official is "subject to suspension" and the delay "shall be grounds for removal from office as may be otherwise provided by law or the constitution." § 105.492

Mr. Edwards contends that this section treats candidates unfairly because it gives those already elected 30 days in which to correct a failure to file before being subject to removal from office, whereas he and other candidates who were not already in public office have only 21 days from the last day for filing for office to file their financial interest statements before being automatically removed from the ballot. He alleges this "unreasonably, arbitrarily, and discriminatorily" treats them differently from public office holders.

Mr. Edwards' argument ignores the fact that to successfully raise an equal protection challenge, one first must show that he or she is similarly situated to those who he alleges receive different treatment. The similarly situated standard is a "rigorous one" requiring proof that the two classes "were similarly situated in all relevant aspects." *Murray v. Sw. Missouri Drug Task Force*, 335 S.W.3d 566, 569 (Mo.App.2011).

For all the reasons just noted in discussing ballot access, elected officials and those running for office are not similarly situated in all respects—one is seeking office while the other already holds it. Elected officials already are required to have financial interest statements on file. Giving them 30 days in which to correct a failure to timely file will not deprive voters of information they need in order to cast their ballots, because the election bringing that person to office already will have occurred—and that person already will have filed a financial interest statement when that person was a candidate. The public, therefore, has ready access to financial interest information about those already holding elective office.

Unlike elected officials, candidates may or may not already hold an elective office requiring financial disclosures equivalent to those required by the financial interest statement. There is the need for these candidates to file their financial interest statements in sufficient time to be useful to voters and before ballots are printed. Candidates, therefore, are not similarly situated to those already in office, who already have financial interest statements on file. Mr. Edwards is not similarly situated to those already holding office. This Court, therefore, rejects his equal protection arguments without further discussing the strength of the rationale for the distinction drawn between the filing requirements for candidates and for those already holding office.[8]

8. The Court would note that absentee ballots are permitted to be printed six weeks prior to an election. Mr. Edwards' financial interest statement was due on or before February 5, 2013, only eight weeks before the election. Not only this but a longer period would be a

### iii. Due Process

Finally, Mr. Edwards contends that section 105.492 denies him due process of the laws because the statute is "procedurally defective" in that a candidate for office is not afforded notice and hearing prior to being disqualified. Mr. Edwards provides no authority supporting his contention as is required under Rule 84.04, however.[9] This Court will not infer, or indeed create, the legal argument for Mr. Edwards. *Bishop v. Metro Restoration Servs., Inc.,* 209 S.W.3d 43, 47 (Mo.App.2006) ("It is not the function of an appellate court to search the record to identify possible errors and research any issues so revealed.")

Even were this Court to review for plain error under Rule 84.13, Mr. Edwards makes no effort to show that the statute is defective on its face, but rather argues that he was denied due process by being denied notice and hearing prior to his disqualification. He appears to make an "as applied" challenge to the statute. But, to support such an "as applied" challenge, Mr. Edwards must show that the statute operates unconstitutionally as to him because of his particular circumstances. *Sabri v. United States,* 541 U.S. 600, 609, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004). Mr. Edwards' does not identify any particular circumstances that made it impossible for him to show without further notice and

hearing that he *had* complied with the requirement that he submit a financial interest statement by no later than 21 days after the deadline for filing a declaration of candidacy, nor does he identify any fact he could have shown had he been given a further opportunity for hearing prior to disqualification that would have shown that he did qualify for having his name placed on the ballot. He admits, to the contrary, that he did violate the filing requirement. His arguments all go to whether the requirements with which he failed to comply violate equal protection or ballot access. His due process claim is without merit.

### IV. CONCLUSION

Chief Coyne brought the claim against Mr. Edwards in the attempt to have him removed from the general municipal election ballot. By obtaining the authorization of the Community Fire Board of Directors to act on its behalf and by testifying that he did so, Chief Coyne demonstrated adequate capacity and standing to bring this action against Mr. Edwards. Mr. Edwards received constitutionally adequate notice that he would be disqualified from the election if he did not submit his financial interest statement within 21 days of the close of the candidacy filing period. He has failed to cite any authority sup-

reasonable one in which to allow the public to examine the filed statements. Had Mr. Edwards been given additional time, it would have deprived the public of sufficient time to examine his filed statement. This is not the case for those who already hold office.

9. Mr. Edwards' due process argument submitted in his brief to this Court states, in total:

The circuit court erred in holding that *Mo. Rev.Stat. § 105.492* does not deny the Appellant Edwards due process of the laws because said Mo.Rev.Stat. § is procedurally defective in that the candidate was not afforded a notice and hearing prior to being

disqualified contrary to both Missouri and Federal constitutions.

The standard of review for substantive due process claims is "truly irrational". *Lemke v. Cass County, Nebraska,* 846 F.2d 469, 470–71 (8th Cir.1987) *(en banc).* The review of the procedural due process claims is fundamental fairness to be heard prior to adverse state action. *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Therefore, the statutory scheme automatically resulting in the disqualification of Mr. Edwards was a denial of his rights to procedural due process. *Id.; Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

porting his claim that Community Fire also was required to apprise him of the applicable mailbox rule. Each of Mr. Edwards' other constitutional claims is similarly unavailing. Section 105.492 cannot form the basis of a successful equal protection challenge as between candidates and office holders because the two groups are not similarly situated. Mr. Edwards' claim that sections 105.487 and 105.492 unconstitutionally deny him ballot access is futile because challenges to statutes imposing candidacy restrictions are subject to the deferential rational basis analysis.

**10.** In his amended reply brief, Mr. Edwards argues that this Court should strike the State's brief for failure to track the exact order of his brief. But the suggestion that a respondent's brief has to address the issues raised by the appellant's brief in the exact order that they are raised by appellant is a misinterpretation of Rule 84.04(f), which states:

The financial interest statement filing deadline is rationally related to a legitimate state interest. Finally,[10] Mr. Edwards' due process claim fails because it was not properly briefed and he alleges no basis for finding that further notice and hearing would have allowed him to show that he did comply with the filing requirements; to the contrary, he admits he did not do so. For all of these reasons, the judgment is affirmed.

All concur.

### APPENDIX A

The argument portion of the respondent's brief shall contain headings identifying the points relied on contained in the appellant's brief to which each such argument responds.

This Rule does not purport to control the manner in which a party's brief is organized, only the content therein. The motion to strike is overruled.

522

Missouri Ethics Commission

## Notice to Candidate

Personal Financial Disclosure (PFD) (aka: Financial Interest Statement)

**Part One: Candidate Information**

Candidate's Name: *Bernard F. Edwards Jr*    Political Subdivision: *Community FPD*

Office Sought: *Director*    Date of Election: *4/02/2013*

**Part Two: Filing Status (Election Official: Select Option A or B. If select Option B, complete Sections 1 & 2)**

Option A. Candidate does not have to file a PFD/Financial Interest Statement because:
1. ☐ The political subdivision's annual operating budget is one million dollars or under.
2. ☐ The political subdivision's annual operating budget is over one million dollars, and the office sought is not a required position pursuant to the conflict of interest ordinance on file with the Missouri Ethics Commission.
3. ☐ The office sought is committeeman or committeewoman.

Option B. Candidate must file a PFD/Financial Interest Statement because:
Section 1:
1. ☐ The political subdivision has a conflict of interest ordinance on file with the Missouri Ethics Commission that specifically requires the position this person is seeking to file; and/or the said data (including spouse, children and/or parents) did business, or owns a substantial interest in a business that did business with the political subdivision in excess of $500, other than compensation, in the preceding twelve months;
2. ☒ The political subdivision does NOT have a conflict of interest ordinance on file with the Missouri Ethics Commission; therefore, the candidate is required to file pursuant to §105.483 to §105.492 RSMo.
3. ☐ Candidate is a new Associate Circuit Judge Candidate (incumbent judges and all other judicial candidates file with the Supreme Court).

Section 2:
Candidates required to file must be informed of the following deadlines/penalties:
1. If PFD/Financial Interest Statement is not filed by ___1/29/2013___ (14 days after filing closing date). PENALTY: Candidate will be assessed a minimum of $10 per day late fee for each day the report is late.
2. If PFD/Financial Interest Statement is not filed by ___2/05/2013___ (21 days after filing closing date). PENALTY: Candidate will be disqualified as a candidate and his/her name will be removed from the ballot.

*If there is a conflict of interest ordinance on file with the Missouri Ethics Commission, and the above deadlines are not met, the penalties are assessed by the political subdivision according to their ordinance.*

**Part Three: Acknowledgement (completed by candidate & witnessed by election official)**

*Bernard F. Edwards Jr* hereby acknowledge that I have received:

Notice to Candidate, (written notice of a candidate's obligation to file a PFD/Financial Interest Statement, including the consequences for failure to file on time); and

Guide to Ethics Law – A Plain English Summary (regarding laws governing candidates for election to office in Missouri) and I hereby acknowledge the authority of the Missouri Ethics Commission, or the political subdivision for which I am filing, in enforcing said laws.

Signature of Candidate      Candidate's Email Address (Optional): n/a

Signature of Election Official (Witness)      Date: 12/11/2012

EXHIBIT

p. 1

10:45PM    HP LASERJET FAX 6