BLUE SPRINGS R–IV SCHOOL
DISTRICT, et al.,
Petitioners,

Mark Cromwell and James Bradshaw,
Respondents/Cross–Appellants,

Ronald Hammons, Misty Rigdon, Jac-
que Gragg, Spencer D. Fields, and
Phillip Holloway, Respondents.

v.

SCHOOL DISTRICT OF KANSAS
CITY, MISSOURI, Respondent
(Cir. Ct.),

State of Missouri, Attorney General
Chris Koster, and Missouri State
Board of Education, Appel-
lants/Cross–Respondents.

No. SC 92932.

Supreme Court of Missouri,
En Banc.

Dec. 10, 2013.

J. Andrew Hirth, Thomas D. Smith, Attorney General's Office, Jefferson City, for The State, Attorney General and State Board of Education.

Duane A. Martin, Columbia, Rachel B. England, Kansas City, Guin Martin Mundorf LLC, for The taxpayers.

LAURA DENVIR STITH, Judge.

Taxpayers in five school districts sued the Kansas City Public Schools (KCPS) and the State of Missouri alleging they are accredited school districts that are required by section 167.131 [1] to accept transfer of students who reside in the unaccredited Kansas City school district. They assert this requirement violates the Hancock Amendment to the Missouri Constitution, *Mo. Const., art. X, §§ 16, 21,* because it mandates that the school districts perform a new or increased level of activity in educating the transfer students.

The trial court agreed that section 167.131 mandates a new activity by requiring the accredited school districts to accept transfers from KCPS, but found that to violate the Hancock Amendment the activity must result in increased costs, which the Blue Springs and Raytown taxpayers had not proven. The court found that the Independence, Lee's Summit and North Kansas City taxpayers had proven such increased costs and entered judgment and an award of attorney's fees as to them. The State appeals the ruling as to Independence, Lee's Summit and North Kansas City, arguing that section 167.131 neither mandates a new or increased level of activity nor increases costs for the activity and so does not violate the Hancock Amendment. Blue Springs and Raytown cross-appeal the ruling that they did not incur increased costs.

While this case was pending on appeal, this Court issued its opinion in *Breitenfeld v. School District of Clayton.* 399 S.W.3d 816 (Mo. banc 2013). *Breitenfeld* involved a very similar claim that the transfer provisions of section 167.131 constituted an unfunded mandate by requiring that students in the then-unaccredited St. Louis Public Schools be permitted to transfer to schools of their choice in adjoining counties. This Court rejected that argument, holding that section 167.131 merely reallocates responsibilities for educating students among districts and that the Hancock Amendment prohibits only new or increased levels of activities, not a shifting of responsibilities among school districts.

The holding in *Breitenfeld* is determinative. Section 167.131 does not mandate a new or increased level of activity but merely reallocates responsibilities among school districts. Further, this Court does not find that the State stipulated to the contrary below, and in any event the State may not by stipulation bind this Court to an erroneous statement of law. The judg-

[1]. All statutory references are to RSMo 2000 unless otherwise indicated.

ment in favor of the Independence, Lee's Summit and North Kansas City taxpayers is reversed, and the judgment against the Blue Springs and Raytown taxpayers is affirmed.

## I. STATEMENT OF FACTS

The KCPS district is one of a number of school districts located in Jackson County, Missouri. In September 2011, the Missouri State Board of Education voted to classify the KCPS district as "unaccredited" effective as of January 1, 2012. This left residents within the KCPS district without an accredited school and triggered the school transfer provision of section 167.131.1, which provides:

> The board of education of each district in this state that does not maintain an accredited school pursuant to the authority of the state board of education to classify schools as established in section 161.092 *shall pay the tuition of and provide transportation consistent with the provisions of section 167.241 for each pupil resident therein who attends an accredited school in another district of the same or an adjoining county.*

(Emphasis added).

In *Turner v. School District of Clayton,* 318 S.W.3d 660, 664 (Mo. banc 2010), this Court held that, pursuant to section 167.131, students living within an unaccredited school district have the option to transfer to accredited schools in the same or an adjoining county. As applied here, this means that section 167.131 gives students in the KCPS district the option to transfer, at the expense of KCPS, to accredited public schools that also are located in Jackson County or that are located in the adjoining counties of Cass, Clay, Johnson, Lafayette, and Ray.

■ Prior to the date KCPS became unaccredited (January 1, 2012), taxpayers from certain accredited school districts located in Jackson County and adjoining counties, including Blue Springs R–IV, Independence 30, Lee's Summit R–VII, Raytown C–2, and North Kansas City 74 School District, sued the State and KCPS seeking declaratory and injunctive relief.[2] The taxpayers argued that section 167.131 violates the Hancock Amendment, article X, sections 16 and 21 of the Missouri Constitution, by requiring accredited school districts to engage in new or increased levels of activities without full state financing.[3] They also brought separate claims, which are not before this Court, challenging the specific transfer policy KCPS

---

**2.** These school districts, along with one or more taxpayers from each district, sued for violation of the Hancock Amendment. As *King–Willmann v. Webster Groves School District,* 361 S.W.3d 414, 416–17 (Mo. banc 2012), reaffirmed, however, school districts lack standing to assert a violation of the Hancock Amendment. *Accord Fort Zumwalt Sch. Dist. v. State,* 896 S.W.2d 918, 921 (Mo. banc 1995) ("By its clear language, Section 23 limits the class of persons who can bring suit to enforce the Hancock Amendment to 'any taxpayer.' In so doing Section 23 recognizes that any apparent injury to the school district is merely derivative of the taxpayers' injury").

**3.** The taxpayers specifically claim that the 1993 amendments to section 167.131 man-

date a new or increased level of activities beyond those required by the statute in effect at the time of the Hancock Amendment's codification in 1980. Prior to the 1993 amendments, section 167.131 addressed transfer rights for students residing in districts that did not offer education through the twelfth grade. Under this earlier version of the statute, school districts offering high school education had discretion to admit or reject students from adjoining districts, who could apply for transfer only after completion of the highest grade level offered in their district of residence. The 1993 amendments to section 167.131 refocused the statute on unaccredited districts by eliminating the requirement that transfer applicants complete the highest grade available in their home dis-

adopted.[4]

The trial court entered partial summary judgment for the taxpayers. Ruling as a matter of law, it held the transfer requirements of section 167.131 impose a new activity on the receiving school districts. Whether this would violate the Hancock Amendment, the court held, would depend on the factual determination as to whether the costs of this new mandate to the receiving districts would be increased or would be offset by the tuition payments required of KCPS under section 167.131. The accredited school districts, KCPS and the State then submitted stipulations and evidence as to the per-pupil costs expended by each district and as to the number of students they anticipated, based on a telephone survey, would transfer to each petitioning district.[5]

After a hearing, the trial court entered a judgment holding that: 1) section 167.131 violates the Hancock Amendment as to the Independence, Lee's Summit, and North Kansas City school districts because the reimbursements provided by KCPS would be inadequate to cover the costs of absorbing the estimated volume of transfer students; and 2) section 167.131 does not violate the Hancock Amendment as to the Blue Springs and Raytown school districts, where the reimbursements were sufficient to cover the estimated costs. The court awarded attorney's fees to those taxpayers who were successful in their Hancock Amendment claims. The State and the Blue Springs and Raytown taxpayers cross-appeal from this judgment.

## II. STANDARD OF REVIEW

 Whether section 167.131 violates the Hancock Amendment is an issue of law that this Court determines *de novo*. *Breitenfeld*, 399 S.W.3d at 825, citing *Sch. Dist. of Kansas City v. State*, 317 S.W.3d 599, 604 (Mo. banc 2010). A statute is presumed to be constitutional and will not be invalidated under the Hancock Amendment unless it "clearly and undoubtedly" violates the constitution. *Breitenfeld*, 399 S.W.3d at 825. The party challenging the statute bears the burden to show a clear constitutional violation. *Id.* Arguments based on speculation and conjecture will not overcome the presumption of constitutional validity. *Id.*

 As to the remaining issues on appeal, the trial court's judgment will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the

---

trict, requiring unaccredited districts to pay tuition for students transferring to adjoining accredited districts, and removing admission discretion from the accredited districts receiving those students. *See* S.B. 380, 87th Gen. Assemb., 1st Reg. Sess. (Mo.1993); *Turner*, 318 S.W.3d at 668–69.

4. The transfer policy included a requirement that transferring students must have attended KCPS for the previous two semesters for KCPS to pay tuition to the accredited districts receiving those students. The taxpayers challenged this provision as a violation of section 167.131, asserting that the statute requires unaccredited districts to pay tuition "for each pupil resident" without reference to prior en-

rollment. The policy also indicated that tuition payments would be made to the receiving districts on a monthly basis rather than paying in advance for the entire year or semester. The taxpayers challenged this provision as violating both the statute and the Hancock Amendment by requiring the accredited districts to incur the costs of educating transfer students before receiving payment from KCPS.

5. A number of objections were raised to the methodology and validity of the survey and its results. These issues need not be reached because of this Court's resolution of the Hancock issue.

law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

### III. SECTION 167.131 DOES NOT VIO-LATE THE HANCOCK AMEND-MENT

■ This Court recently and unanimously held in *Breitenfeld*, 399 S.W.3d at 828–32, that section 167.131 does not impose an unfunded mandate in violation of the Hancock Amendment. *Breitenfeld* is determinative of this appeal. As *Breitenfeld* noted, the Hancock Amendment only bars the state from mandating "[a] new activity or service or an increase in the level of any activity or service beyond that required by existing law." Mo. Const., art. X, § 21. *Breitenfeld* observed that section 167.131 simply addresses which school districts will educate which students. It does not impose a "new" educational activity on local districts because all districts already are required by statute and the Missouri Constitution to provide a free public education to students in grades K–12. Similarly, there is no mandated "increase in the level" of those services for the purposes of the Hancock Amendment, even if the district provides such services to more students as a result of transfers from unaccredited districts. This is simply an increase in the frequency of providing the same service and is not a violation of the Hancock Amendment any more than would be the obligation to educate new students moving into a district each year. *Breitenfeld*, 399 S.W.3d at 828–32.

The taxpayers attempt to distinguish their claims from those raised in *Breitenfeld* by asserting that Hancock Amendment challenges are specific to each political subdivision, and they urge the Court to consider whether accepting transfers from an unaccredited district constitutes a new or increased level of activity for each specific, individual school district. This argument is without merit. As discussed in detail in *Breitenfeld*, the purpose of the Hancock Amendment is to prevent burden-shifting from the State to local political subdivisions. *Id.* at 831–32. The Hancock Amendment does not prohibit the reallocation of existing statewide educational activities among local entities pursuant to section 167.131, whether considered generally or district by district. *Id.*

The taxpayers also argue that *Breitenfeld* is distinguishable in that it does not reach their central claim that the burden imposed by section 167.131 is entirely unfunded by the State.[6] As explained in *Breitenfeld*, however, section 167.131 does not mandate new or increased levels of activities. *Id.* at 828–31. Taxpayers concede that their argument depends on this Court overruling this holding in *Breitenfeld*. This Court instead reaffirms *Breitenfeld*. A Hancock Amendment violation requires both that a law mandate a new or increased level of activity and that it result in more than de minimus increased costs to the local entity. *Breitenfeld*, 399 S.W.3d at 826.[7] These requirements are

6. The basis of the taxpayers' claim that there is no funding available for students transferring under section 167.131 is unclear because the statute itself requires that the unaccredited sending district "shall pay the tuition of and provide transportation ... for each pupil resident therein who attends an accredited school in another district of the same or an adjoining county." § 167.131.1. If the argument is that there is no increased funding,

that is irrelevant if there are no increased mandated costs. To the extent that this argument stems from questions about the ability of KCPS to pay the tuition costs, the trial court refused to speculate on this point, and this issue is not before the Court on appeal.

7. The taxpayers do not argue here, as they did in *Breitenfeld*, that it would be impossible for

not met here as the statute does not mandate a new or increased level of activity.

## IV. JUDICIAL ESTOPPEL IS INAPPLICABLE

The taxpayers contend that the State is judicially estopped from arguing under *Breitenfeld* that section 167.131 does not mandate a new or increased level of activity from transferee districts because this would be contrary to two stipulations made by the State at trial that: 1) "The mandate to admit non-resident students residing in unaccredited school districts was created by an amendment to Mo.Rev.Stat. § 167.131 in 1993"; and 2) the receiving school districts would "not receive any specific funding directly from the State of Missouri to finance the costs associated with admitting and educating KCPS students."

▮▮▮ The first stipulation simply sets out the parties' agreement as to the meaning of the 1993 amendment to section 167.131. It does not stipulate that the amended statute mandates a new or increased level of activity. Even had it done so, the State cannot by stipulation or otherwise bind this Court to a particular interpretation of a statute. *See State v. Biddle*, 599 S.W.2d 182, 186 n. 4 (Mo. banc 1980) ("The general rule is that stipulations of litigants cannot be invoked to bind or circumscribe a court in its determination of questions of law"). The school districts characterize this stipulation as one of fact, but the meaning of the 1993 amendments to section 167.131 is an issue of law, determined by this Court in *Breitenfeld*. This Court must interpret statutes according to their plain meaning and the intent of the legislature. *Ross v. Dir. of Revenue*, 311 S.W.3d 732, 735 (Mo. banc 2010). The stipulation as to the meaning

of the 1993 amendments, however, is consistent with the holding in *Breitenfeld*. This does not assist the school districts for it does not state that the amendment creates a new or increased level of activity, and *Breitenfeld* held to the contrary.

The second stipulation, that the State has not made a specific appropriation to cover increased costs associated with admitting and educating KCPS students, is a statement of fact. As *Breitenfeld* made clear, however, the Hancock Amendment does not apply where, as here, any alleged increased costs result from a reallocation of responsibilities among districts rather than from a state mandate to undertake a new or increased level of activity. Such a shift in responsibility for educating students is not a state-mandated new or increased level of activity. *Breitenfeld*, 399 S.W.3d at 828–831. Therefore, even accepting the stipulation or the trial court's finding that some of the districts would have increased costs, the correctness of which this Court does not reach, there is no state-mandated new or increased level of activity and, hence, no violation of the Hancock Amendment.

## V. ATTORNEY'S FEES

The State challenges the attorney's fees the trial court awarded the taxpayers based on their successful Hancock Amendment challenge. Because this opinion reverses the trial court's judgment as to the Hancock Amendment violation, the State's challenge is moot and the trial court judgment awarding attorney's fees to the taxpayers is reversed.

## VI. CONCLUSION

The trial court's judgment granting relief to the Independence, Lee's Summit, and North Kansas City school districts and

the receiving districts to comply with section 167.131.

awarding attorney's fees is reversed. In all other respects the judgment is affirmed.

All concur.