

# SUPREME COURT OF MISSOURI
## en banc

CITY OF ST. LOUIS, et al., )   *Opinion issued January 30, 2024*
)
Appellants, )
)
v. ) No. SC99876
)
STATE OF MISSOURI, et al., )
)
Respondents. )
)

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
The Honorable Jon E. Beetem, Judge

The City of St. Louis ("City") and Heather Taylor (collectively, "Appellants") appeal the circuit court's judgment sustaining the State's motion for judgment on the pleadings and denying Appellants' request for a declaration that Senate Bill No. 26 ("SB 26") violates the Missouri Constitution. Appellants bring six points on appeal, five of which allege the circuit court erred in sustaining the State's motion for judgment on the pleadings[1] because SB 26

---

[1] This Court recognizes that Century Casinos, Inc., ("Intervenor") intervened in this case and filed a motion for partial judgment on the pleadings, arguing Appellants' counts I and II, relating to SB 26's alleged violations of the original-purpose and single-subject rules and SB 26's alleged unconstitutional unfunded mandate, were without merit. Intervenor also argued invalidating the statute would not be the proper remedy if the circuit court were to find a constitutional violation. Along with the State's motion for judgment on the pleadings, the circuit court also sustained Intervenor's motion for partial judgment on the pleadings. Because the State's and Intervenor's contentions regarding Appellants' Points I and II are

violates the Missouri Constitution.  Alternatively, Appellants allege the circuit court erred in sustaining the State's motion for judgment on the pleadings because, if SB 26 is deemed constitutional, the City is already in compliance with SB 26's requirements.  Finding the City sufficiently pleaded the elements of a Hancock Amendment violation,[2] the circuit court's judgment is reversed as to Point II, and the case is remanded on that point.  Finding SB 26 has the same purpose as enacted as introduced, does not impose new duties on city employees or allocate funds for public purposes, and has a rational basis for treating law enforcement officers differently from other city employees, this Court affirms the judgment with respect to Appellants' remaining points.

## Factual and Procedural Background

SB 26 was introduced in December 2020.  In its original iteration, SB 26 contained two sections, seeking to amend chapter 574 to add the offense of "unlawful traffic interference" and chapter 590 to add procedures for imposing discipline on law enforcement officers (known as the "Law Enforcement Officers' Bill of Rights").[3]  By the time the bill was perfected in February, 2021, the bill sought to amend or enact seven sections.[4]  SB 26

---

substantially similar, this Court refers only to the State's motion for judgment on the pleadings.

[2] Article X, sections 16 through 24 of the Missouri Constitution are known as the Hancock Amendment.

[3] All references are to RSMo Supp. 2022 unless otherwise specified.

[4] The five additional provisions relate to: taxpayer standing to bring a claim for alterations in the local law enforcement budget (section 67.030.2); the possible forfeiture of a police commissioner (section 84.400.2); offenses relevant to parole ineligibility (section 557.045(4)); vandalism of public property (section 574.085.1(7)); and the creation of the "988 Public Safety Fund" (section 590.192).

was then sent to the Missouri House of Representatives. Ultimately, the bill as finally signed into law in July, 2021, contained 88 sections.[5]

The City filed suit in December, 2021, requesting declaratory judgment on five grounds: (I) SB 26 violates the original-purpose and single-subject requirements contained in article III, sections 21 and 23 of the Missouri Constitution; (II) SB 26 creates an unfunded mandate in violation of the Hancock Amendment; (III) SB 26 violates article VI, section 22 by imposing additional or enlarged duties on officers and employees of a constitutional charter city; (IV) SB 26 violates article III, section 38(a) by requiring the City to provide public funds for private purposes; and (V) SB 26 violates the right to equal protection of employees who are not law enforcement officers by creating a due process scheme favoring law enforcement officers. The City is a constitutional charter city.[6] *See* Mo. Const. art. VI,

---

[5] These additional provisions purport to amend 44 provisions relating to the Missouri Department of Corrections (sections 56.380, 56.455, 105.950, 149.071, 149.076, 214.392, 217.010, 217.030, 217.250, 217.270, 217.362, 217.364, 217.455, 217.541, 217.650, 217.690, 217.692, 217.695, 217.710, 217.735, 217.829, 549.500, 557.051, 558.011, 558.026, 558.031, 558.046, 559.026, 559.105, 559.106, 559.115, 559.115, 559.125, 559.600, 559.602, 559.607, 566.145, 571.030, 575.205, 575.206, 589.042, 650.055, and 650.058); the role of the chairperson of the parole board (section 217.655); regulations of battery-charged fences (section 67.301); regulations of physical security measures (section 67.494); emergency services systems' eligibility for financial assistance (section 650.335); immunity of public agency operating emergency systems (section 190.307); parole eligibility (sections 217.690, 217.692, and 557.045); pesticide certification and training (sections 281.015-.101); emergency lights on vehicles (sections 304.022 and 307.175); the sale of alcohol by felony offenders (sections 311.060, 311.660, and 313.220); the definition and regulation of gambling boats (sections 313.800, 313.805, and 313.812); surveillance cameras on private property (section 542.525); protection of special victims (section 565.058); the criminalization of interference with a health care facility (section 574.203); the criminalization of interference with an ambulance service (section 574.204); and peace officer licensure (section 590.030).
[6] The Missouri Constitution grants certain cities the authority to adopt and amend a charter, intending to grant such cities "broad authority to tailor a form of government that its citizens

sec. 19. The City alternatively requested declaratory judgment finding it in compliance with SB 26 because the City's charter provides procedures substantially similar to SB 26.

In March, 2022, the State filed its answer and a motion for judgment on the pleadings, alleging it was entitled to judgment as a matter of law because SB 26 does not violate the Missouri Constitution, Appellants lacked standing to bring an unfunded mandate claim, and Appellants' request for declaratory judgment regarding the City's compliance with SB 26 under its current charter was not justiciable.

In November, 2022, the circuit court sustained the State's motion for judgment on the pleadings and Intervenor's motion for partial judgment on the pleadings and overruled the City's cross-motion for judgment on the pleadings. Regarding each claim, the circuit court found: (I) SB 26 retained its original purpose throughout the amendment process; (II) for each allegedly new requirement, the City was either already conducting such activities or the City could not demonstrate the allegedly new activities would incur additional costs; (III) SB 26 does not impose duties on any *particular* charter city employee; (IV) a police officer is not a private person and, alternatively, if a police officer is a private person, the grant that occurs only when officers act "under the color of law" is for the public purposes of incentivizing "police officers to *act* to protect the public rather than turn a blind eye" and incentivizing municipalities to properly train law enforcement to avoid civil liability; and (V) there is a rational basis to treat law enforcement officers differently from other city employees because law enforcement officers frequently protect the public from persons who are violently

---

believe will best serve their interests." *City of Springfield v. Goff*, 918 S.W.2d 786, 789 (Mo. banc 1996).

breaking the law. Finally, the circuit court denied Appellants' request for a declaration that the City is in substantial compliance with SB 26 because such a judgment would be an advisory opinion.

**Standard of Review**

This Court has exclusive appellate jurisdiction over this case, which involves the validity of a state statute. Mo. Const. art. V, sec. 3. This Court reviews a circuit court's ruling on a motion for judgment on the pleadings *de novo*. *Gross v. Parson*, 624 S.W.3d 877, 883 (Mo. banc 2021). "In reviewing the grant of a motion for judgment on the pleadings, this Court must decide whether the moving party is entitled to judgment as a matter of law on the face of the pleadings." *Emerson Elec. Co. v. Marsh & McLennan Cos.*, 362 S.W.3d 7, 12 (Mo. banc 2012) (internal quotation marks omitted). "The well-pleaded facts of the non-moving party's pleading are treated as admitted for purposes of the motion." *Gross*, 624 S.W.3d at 883 (internal quotation marks omitted). "However, [t]his Court will not blindly accept the legal conclusions drawn by the pleaders from the facts." *Id.* (alteration in original) (internal quotation marks omitted). This Court will affirm a grant of judgment on the pleadings "only if the facts pleaded by the petitioner, together with the benefit of all reasonable inferences drawn therefrom, show that petitioner could not prevail under any legal theory[,]" *Emerson Elec. Co.*, 362 S.W.3d at 12 (internal quotation marks omitted), "regardless of whether the reasons advanced by the [circuit] court are wrong or not sufficient." *City of St. Louis v. State*, 643 S.W.3d 295, 299-300 (Mo. banc 2022) (alteration in original) (internal quotation marks omitted).

This Court is guided by well-established standards in analyzing challenges to the constitutional validity of statutes. *Calzone v. Interim Comm'r of Dep't of Elementary & Secondary Educ.*, 584 S.W.3d 310, 315 (Mo. banc 2019). This Court reviews constitutional challenges to statutes *de novo. Id.* "Attacks against legislative action founded on constitutionally imposed procedural limitations are not favored." *Carmack v. Dir., Mo. Dep't of Agric.*, 945 S.W.2d 956, 959 (Mo. banc 1997). This Court will presume a statute is valid "unless it clearly contravenes a constitutional provision." *Calzone*, 584 S.W.3d at 315. Further, this Court "will attempt to avoid an interpretation of the Constitution that will limit or cripple legislative enactments any further than what was necessary by the absolute requirements of the law." *Carmack*, 945 S.W.2d at 959 (internal quotation marks omitted). The City bears the burden of establishing the statute is unconstitutional. *Calzone*, 584 S.W.3d at 315.

## Analysis

The main issue presented is whether SB 26 was properly enacted under the Missouri Constitution. This Court first addresses Point II, finding it dispositive.[7] The remaining

---

[7] This Court notes Appellants' briefing deficiencies under Rule 84.04. "Rule 84.04 plainly sets forth the required contents of briefs filed in all appellate courts." *Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022). These "requirements are mandatory." *Id.* Point I does not follow the structure for points relied on laid out in Rule 84.04(d)(1) in that the point fails to explain why the legal reasons, "*in the context of the case*, support the claim of reversible error." Rule 84.04(d)(1)(C) (emphasis added). Point I additionally asserts two separate and independent challenges to SB 26 under article III of the Missouri Constitution. *See Calzone*, 584 S.W.3d at 316. Therefore, Appellants' first point relied on is multifarious and fails to comply with Rule 84.04. *See Cedar Cnty. Comm'n v. Parson*, 661 S.W.3d 766, 772-73 (Mo. banc 2023). "[T]his Court has the discretion to review deficient points *ex gratia.*" *Id.* at 772. Point II additionally does not follow Rule 84.04(d)(1)'s structure but contains all the necessary information. Further, Appellants' brief is devoid of any

6

points, being necessary to reach this Court's holding in Point II, follow.[8]

### Point II – Article X, Section 21: Unfunded Mandate

In their second point on appeal, Appellants contend the circuit court erred in sustaining the State's motion for judgment on the pleadings because Appellants sufficiently pleaded that SB 26 creates an unfunded mandate by increasing the City's costs by requiring it to perform new and increased levels of activities without providing corresponding appropriations to fund

preservation statement required by Rule 84.04(e). This Court's preference is to decide cases on their merits "rather than on technical deficiencies in the brief" and "this Court will not exercise discretion to disregard a defective point unless the deficiency impeded disposition on the merits." *J.A.D. v. F.J.D.*, 978 S.W.2d 336, 338 (Mo. banc 1998). "A brief impedes disposition on the merits where it is so deficient that it fails to give notice to this Court and to the other parties as to the issue presented on appeal." *Id.* Here, Appellants' argument is readily understandable, and this Court cautiously exercises its discretion to decide the case on the merits "because each time we review a noncompliant brief *ex gratia*, we send an implicit message that substandard briefing is acceptable. It is not." *Carruthers v. Serenity Mem'l Funeral Cremation Servs., LLC*, 576 S.W.3d 301, 305-06 (Mo. App. 2019).

[8] If this Court were to find SB 26's enactment unconstitutional for any of the reasons raised in Points I, III, IV, or V, this Court's analysis in Point II may not be necessary. This Court may strike unconstitutional provisions in a statute in an original purpose analysis or may strike the unconstitutional statute in its entirety. Here, this Court finds SB 26's enactment passes constitutional muster on original purpose, the rights of constitutional charter cities, limitation of state funds, and equal protection grounds. This Court reverses on Hancock Amendment grounds, however, not because this Court finds there *is* a clear Hancock Amendment violation, but because Appellants sufficiently *pleaded* a violation of the Hancock Amendment. If this Court found SB 26 unconstitutional on any of the aforementioned grounds, discussion of Point II would be moot. Further, Hancock claims are not attacks on the validity of the challenged provision. Rather, they are an attack on the provision's enforcement. *See Breitenfeld v. Sch. Dist. of Clayton*, 399 S.W.3d 816, 820 n.3 (Mo. banc 2013) ("[A] challenge to a statute premised on the Hancock Amendment's prohibition against unfunded mandates does not invoke this Court's exclusive jurisdiction. Even if an unfunded mandate violating the Hancock Amendment is established, the remedy is not the total invalidation of the statute as unconstitutional but rather the entry of a declaratory judgment that relieves the duty to perform the state-mandated activity or service at issue."). Hancock claims, therefore, are distinct from the various other claims Appellants raise. Additionally, this Court's findings that SB 26 passes constitutional muster on the aforementioned points preserves judicial economy and resources as those points need not be relitigated.

the new and increased levels of activities. Appellants specifically argue they sufficiently pleaded that SB 26's following requirements denote new or increased levels of activity the City was not previously required by law to perform: defending and indemnifying police officers sued civilly; reimbursing police officers for lost income from private employment during disciplinary investigations; complying with new investigations deadlines; transcribing oral statements and furnishing to officers copies of the entire record of administrative investigations; providing access to documents used as a basis for disciplinary actions in advance of hearings; and providing a right to judicial review of alleged violations of rights under section 590.502.

*Standing*

As a preliminary matter, this Court addresses the State's question of standing. Before a case may be heard by Missouri courts, a plaintiff must present a justiciable controversy. *Schweich v. Nixon*, 408 S.W.3d 769, 773 (Mo. banc 2013). "A justiciable controversy exists [when] [1] the plaintiff has a legally protectable interest at stake, [2] a substantial controversy exists between parties with genuinely adverse interests, and [3] that controversy is ripe for judicial determination." *Id.* at 773-74 (internal quotation marks omitted). "The first two elements of justiciability are encompassed jointly by the concept of 'standing.'" *Id.* at 774. Standing generally requires a party to "have a personal stake arising from a threatened or actual injury." *Id.* The Missouri Constitution provides that "any taxpayer of the state, county, or other political subdivision shall have standing to bring suit … to enforce the provisions of [the Hancock Amendment, *inter alia*]." Mo. Const. art. X, sec. 23.

Urging this Court to find Appellants do not have standing to bring a Hancock Amendment claim, the State alleges this "is actually a claim by [one] level of government against another" that is prohibited under the Hancock Amendment. The State specifically argues Taylor, a city employee represented by the City's attorney, should not be permitted to raise a Hancock claim because naming her as a taxpayer plaintiff is an attempt to circumvent the Hancock Amendment's standing requirement. The State asserts this Court's holdings would become meaningless if the City is permitted to "produce a single employee, place his or her name on the case heading and under the representation of its attorneys, and proceed to prosecute what is actually a claim by that level of government against another."[9]

This Court has previously permitted government entities and taxpayers to bring Hancock challenges as co-plaintiffs and clarified that government entities do not have standing for such claims, but the taxpayers do. *See, e.g.*, *Fort Zumwalt Sch. Dist. v. State*, 896 S.W.2d 918, 921 (Mo. banc 1995); *Blue Springs R-IV Sch. Dist. v. Sch. Dist. of Kan. City*, 415 S.W.3d 110, 112 n.2 (Mo. banc 2013); *see also State ex rel. City of Desloge v. St. Francois Cnty.*, 245 S.W.3d 855, 861 (Mo. App. 2007) (finding that city officials included as co-parties with the county and alleged as taxpayers have standing to bring a Hancock Amendment challenge). This Court sees no reason to stray from precedent and a clear

---

[9] The State also requests that this Court presume Taylor was named as a plaintiff in her official capacity as a city employee. This Court declines to do so because Appellants' petition identifies Taylor as a "resident taxpayer of the City of St. Louis." Further, in Appellants' Hancock Amendment violation count, the petition clarifies Taylor raises this claim as a taxpayer by alleging: "Plaintiff City has expended or will expend funds derived from *plaintiff Taylor and other taxpayers* to defend, represent, and indemnify law enforcement officers as required by Section 590.502.7 of SB 26." (Emphasis added).

9

reading of article X, section 23 simply because Taylor has exercised her "near absolute" right to freely choose her counsel. *In re Cupples*, 952 S.W.2d 226, 234 (Mo. banc 1997).

*Sufficiency of the Pleadings*

The Hancock Amendment states, in relevant part:

> The state is prohibited from requiring any new or expanded activities by counties and other political subdivisions without full state financing, or from shifting the tax burden to counties and other political subdivisions ….
> … .
> …  A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the general assembly or any state agency of counties or other political subdivisions, unless a state appropriation is made and disbursed to pay the county or other political subdivision for any increased costs.

Mo. Const. art. X, secs. 16, 21. These sections "are aimed at preventing [the state] from circumventing the taxing and spending limitations intended by the Hancock Amendment by forcing political subdivisions to do the taxing and spending that the State cannot."

*Breitenfeld v. Sch. Dist. of Clayton*, 399 S.W.3d 816, 826 (Mo. banc 2013). The constitution's plain language indicates that a Hancock Amendment violation occurs if both: "(1) the State requires a new or increased activity or service of political subdivisions; and (2) the political subdivisions experience increased costs in performing that activity or service." *Id.* A new or increased activity or service is present when the State requires a political subdivision "to begin a new mandated activity or to increase the level of an existing activity beyond the level required on [the date the Hancock Amendment was enacted]." *Id.*

10

In addressing Appellants' Hancock Amendment claim, the circuit court found, relating to each of the alleged unfunded activities, either that SB 26 did not *mandate new* activities[10] or that the City's petition failed to sufficiently allege that the City would experience increased costs. In their petition, Appellants state: "Plaintiff City has expended or will expend funds derived from plaintiff Taylor and other taxpayers to defend, represent, and indemnify law enforcement officers as required by Section 590.502.7 of SB 26." Appellants also alleged: "[T]o the extent that plaintiff City or said Board in fact budgeted funds to pay judgments against individual police officer employees, [section] 590.052.7 will result in a substantial increase in such budgeted funds over and above the level of funding as of the date of adoption of the Hancock Amendment (November 4, 1980)." Additionally, referring to taking depositions, implementing deadlines, and providing evidence and information to law enforcement officers prior to disciplinary hearings, Appellants' alleged:

> As a result of [section] 590.502 of SB 26, plaintiff City will incur the following additional costs: (a) hiring additional attorneys and support staff in the City Counselor's Office for the City of St. Louis ("City's Civil Law Department") to handle police discipline matters and to defend claims against police officer employees, in addition to the number of attorneys employed by the City on November 4, 1980; (b) retaining special counsel to represent individual police officers in pending actions where plaintiff City is attempting to discharge or discipline such officers during the pendency of those actions; (c) hiring or assigning additional personnel to the Police Division's Internal Affairs Division in order to comply with the time limits for disciplinary investigations mandated by SB 26[.]

---

[10] This Court need not address the circuit court's discussion of the merits. The case was disposed of by a grant of judgment on the pleadings. This Court finds Appellants sufficiently pleaded the ultimate facts of their claim, and these facts, taken as true and with all reasonable inferences drawn therefrom, do not demonstrate Appellants could not prevail under any legal theory as required for a judgment on the pleadings. *Emerson Elec. Co.*, 362 S.W.3d at 12.

11

In finding Appellants' pleadings deficient, the lower court failed to appreciate the difference between a motion for judgment on the pleadings with the requirements for a motion for summary judgment. *See* Rule 74.04; Rule 55.27(b). With a motion for judgment on the pleadings, Appellants were not yet required to adduce evidence in support of their claim, as is required for a motion for summary judgment. *Compare* Rule 74.04(c) (requiring the moving party attach all discovery, exhibits or affidavits on which the motion relies), *with* Rule 55.27(b) (relating solely to the face of the pleading).[11] A grant of judgment on the pleadings will be affirmed "only if the facts pleaded by the petitioner, together with the benefit of all reasonable inferences drawn therefrom, show that petitioner could not prevail under any legal theory." *Emerson Elec. Co.*, 362 S.W.3d at 12 (internal quotation marks omitted). "The well-pleaded facts of the non-moving party's pleading are treated as admitted for purposes of the motion." *Id.* (internal quotation marks omitted). Appellants have pleaded the ultimate fact of increased costs and provided examples of where those increased costs may originate from; however, Appellants were not provided the opportunity to adduce further evidence. Accepting Appellants' well-pleaded facts as true, they have sufficiently alleged increased costs.

*Ripeness*

The circuit court additionally found Appellants' claim regarding the defend and indemnify provision was not ripe because Appellants did not allege there was currently any

---

[11] A motion for judgment on the pleadings may be converted to a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court[.]" Rule 55.27(b). This situation does not apply here.

12

city employee requesting the City indemnify and defend them under SB 26. The circuit court, therefore, found there was no presently existing conflict to resolve.

Ripeness is the third element of a justiciable controversy. "Ripeness is determined by whether the parties' dispute is developed sufficiently to allow the court to make an accurate determination of the facts, to resolve a conflict that is presently existing, and to grant specific relief of a conclusive character." *Schweich*, 408 S.W.3d at 774. In a Hancock claim, "a case is not ripe without specific proof of new or increased duties and increased expenses, and these elements cannot be established by mere 'common sense,' or 'speculation and conjecture.'" *Brooks v. State*, 128 S.W.3d 844, 849 (Mo. banc 2004). Plaintiffs need show, however, only that the increased cost will be more than *de minimis*. *Id.*

In Missouri, plaintiffs must plead ultimate facts to satisfy the fact-pleading standard. *Gross*, 624 S.W.3d at 892. Ultimate facts refer to the facts a jury must find to return a verdict for the plaintiff and are distinguishable from evidentiary facts. *Id.* at 893. Regarding a Hancock Amendment violation, plaintiffs must prove a "new" or "increased" activity and that the mandate is unfunded, i.e., an increased cost in performing the new activity without being offset by sufficient State funding. *Breitenfeld*, 399 S.W.3d at 833.

In *Brooks*, this Court found the plaintiffs' Hancock claim was ripe only as to the counties in which plaintiffs demonstrated "specific proof of increased costs." 128 S.W.3d at 849. This determination, however, was made *following* a hearing wherein evidence was adduced. *Id.* (describing the testimony introduced of anticipated activities and costs). This is distinguishable from the situation at hand, wherein Appellants' claim was disposed of by a judgment on the pleadings.

13

As described above, Appellants sufficiently pleaded increased costs necessary for a Hancock Amendment claim. Appellants included in their petition the necessary ultimate facts for a Hancock Amendment violation: alleging specific actions the City would be required to undertake (defending, representing, and indemnifying law enforcement officers, as well as specific actions arising throughout the disciplinary and appeals processes that would require hiring or assigning additional personnel to these matters); alleging these requirements are new; and alleging these burdens are placed on the City without any appropriations. Whether these ultimate facts can be supported by sufficient evidence is yet to be determined.

Because Appellants have sufficiently pleaded their Hancock Amendment claim and finding the claim justiciable, this claim survives a motion for judgment on the pleadings. The judgment is reversed as to Appellants' Hancock Amendment claims, and the case is remanded for further proceedings.

### Point I – Article III, Section 21: Original Purpose

In their first point on appeal, Appellants contend the circuit court erred in granting the State's motion for judgment on the pleadings because Appellants sufficiently alleged in their petition that SB 26, in its final form, impermissibly deviates from its purpose as originally stated and impermissibly includes provisions not related to a single subject, in violation of article III, sections 21 and 23 respectively. Because Point I is multifarious, this Court exercises its discretion to review the merits of only the first claim of error, SB 26's alleged deviation from its original purpose. *See Cedar Cnty. Comm'n*, 661 S.W.3d at 772-73 ("When

14

the point is multifarious, such *ex gratia* review can be limited to one of the improperly combined points, often the first one.").

"Article III, section 21 prohibits any bill from being 'so amended in its passage through either house as to change its original purpose.'" *Legends Bank v. State*, 361 S.W.3d 383, 386 (Mo. banc 2012) (quoting Mo. Const. art. III, sec. 21). This provision restricts the "introduction of a matter that is not germane to the object of the legislation or that is unrelated to its original subject." *Id.* Article III, section 21, however, "was not designed to inhibit the normal legislative processes in which bills are combined and additions necessary to comply with the legislative intent are made." *Calzone*, 584 S.W.3d at 317 (internal quotation marks omitted).

In determining whether a bill violates article III, section 21, this Court must first identify the bill's original purpose. *Legends Bank*, 361 S.W.3d at 386. "[P]urpose means the general purpose of the bill, not the mere details through which and by which that purpose is manifested and effectuated." *Calzone*, 584 S.W.3d at 317 (alteration in original) (internal quotation marks omitted). "[T]he general purpose is often interpreted as an overarching purpose." *Id.* (alteration in original) (internal quotation marks omitted). "To the extent the bill's original purpose is properly expressed in the title to the bill, [this Court] need not look beyond the title to determine the bill's subject." *Hammerschmidt v. Boone Cnty.*, 877 S.W.2d 98, 102 (Mo. banc 1994). However, "[w]here an amorphous title to a bill renders its subject uncertain … the Court may determine the subject of the bill from two sources." *Carmack*, 945 S.W.2d at 960. First, the Court may look to the Missouri Constitution. *Id.* Second, the Court may examine the contents of the bill as originally filed. *Id.*

15

After determining the bill's original purpose, this Court compares the original purpose with the final version of the bill to determine if the end result is germane to the original object of the legislation. *Legends Bank*, 361 S.W.3d at 386. Germane means: "in close relationship, appropriate, relative, pertinent. Relevant or closely allied." *Calzone*, 584 S.W.3d at 317 (internal quotation marks omitted).

SB 26's original purpose was to "amend chapters 574 and 590, RSMo, by adding thereto two new sections *relating to public safety*, with penalty provisions." (Emphasis added). Appellants argue the State's construction of "public safety" is overly broad and urge this Court to find the following provisions unrelated to SB 26's original purpose: "heightened procedural protections for officers charged with misconduct"; "obligating City to represent and indemnify law enforcement officers in civil matters"; "[regulating] any product potentially *capable of harm*"; "protecting property owned by the State"; "technical amendments" purporting to make terms in statutes consistent just because the terms are related to the criminal justice system; and administrative assignments of the Missouri Department of Public Safety.

This Court has previously found phrases such as "public safety" are too broad and amorphous to describe the subject of a pending bill with the precision necessary to provide notice of its contents.[12] This Court need not consider this issue here, however, because

---

[12] In *Carmack*, this Court focused on the language "administer all programs" to determine "[a] program administered by an agency other than the department of economic development is not an economic development program within the meaning of the constitution." 945 S.W.2d at 960. This Court found this scope of "economic development" to be consistent with the content of the bill as originally filed in that five of the six changes proposed "relate to programs administered by the department of economic development." *Id.* Although some

16

Appellants have not raised a "clear title" claim. *See Carmack*, 945 S.W.2d at 960. Therefore, following the analysis in *Carmack*, this Court may look to the Missouri Constitution to more clearly identify the bill's original purpose. Article IV, section 48 of the Missouri Constitution is dedicated to "public safety." That section deals exclusively with the department of public safety and requires the department to "administer the programs provided by law to protect and safeguard the lives and property of the people of the state." Mo. Const. art. IV, sec. 48. Second, consistent with the stated purpose, the original version of SB 26 added section 574.045, creating the offense of and identifying penalties for unlawful traffic interference, and section 590.502, setting requirements for investigations that could lead to a law enforcement officer's disciplinary action, demotion, dismissal, or transfer and, most relevant here, requiring employers to defend and indemnify officers in certain civil actions. Section 590.502 is known as the "Law Enforcement Officers' Bill of Rights." Looking to the Missouri Constitution, SB 26's stated purpose, and SB 26's original provisions, it is apparent the bill's primary subject is to enact laws to protect and safeguard the lives of Missouri citizens.

The final version of SB 26 purports to repeal 79 listed provisions "and to enact in lieu thereof eighty-eight new sections relating to public safety, with penalty provisions and an effective date for certain sections." Appellants take issue with a myriad of provisions, such

---

amendments in SB 26 relate to programs administered by the department of public safety is relevant in determining that amendment's relation to public safety, unlike in *Carmack*, every amendment in SB 26 need not relate to a program administered by the department of public safety because the Court looks at the definition of "public safety" in the Missouri Constitution in conjunction with the original contents of the bill. *Id.* The original provisions of SB 26 are not programs administered by the department of public safety.

as those that: institute penalties for tax fraud; prevent non-salary payments to circuit attorneys for indictments or convictions; set the salaries of state department heads; regulate state-run lotteries; penalize faulty cigarette tax payments; provide for the care of cemeteries; limit the regulations on battery-charged fences; regulate the use of pesticides; prohibit physical security regulations for private property; and identify powers of excursion gambling boat supervision.[13] Each of SB 26's provisions, however, sufficiently relates to protecting or safeguarding the lives and property of Missouri citizens. Limiting discussion to the substantive changes, the amendments relating to state-run lotteries (section 313.220), gambling boats (section 313.800), and cigarette tax payments (section 149.071) relate to programs administered by the department of public safety. *See Carmack*, 945 S.W.2d at 960-61 (finding amendments relating to economic development programs administered by the department of economic development germane to the bill's original stated purpose of "economic development"). The amendments regarding battery-charged fences (section 67.301) and pesticides (section 281.015) specifically purport to amend the *regulation and certification* of items capable of causing harm to Missourians. "This conclusion is consistent

---

[13] It is important to note many of these 88 amended provisions do not purport to completely transform the preexisting provision. Gratuitously, only 44 sections make any substantive changes. The other 43 merely edit and/or clarify the language of the existing provision, *e.g.*, changing "Chairman" to "Chairperson" or "chair," "his" to "his or her," "board of probation and parole" to "parole board." These minor edits are properly contained in SB 26 because making the language of the statutes consistent is "necessary to comply with the legislative intent" and each provision altered in this way relates to the administration of programs designed to protect and safeguard the lives and property of Missouri citizens. *See Calzone*, 584 S.W.3d at 317 (internal quotation marks omitted); *see, e.g.*, section 214.392 (amending one subsection in a statute regulating the care of cemeteries to make a single change in terminology: changing "board of probation and parole" to "division of probation and parole").

with this Court's precedent of broadly and liberally interpreting a bill's original purpose so as to uphold the bill's constitutional validity." *Calzone*, 584 S.W.3d at 319 (collecting cases).

SB 26 is distinguishable from the bills this Court struck down in *Legends Bank*, *Missouri Association of Club Executives v. State*, 208 S.W.3d 885 (Mo. banc 2006), and *Hammerschmidt*. In *Legends Bank*, the bill's original purpose was specific, purporting to add "one new section relating to contracts for purchasing, printing, and service*s* for statewide elected officials." 361 S.W.3d at 385. The subsequent amendments regarding ethics, campaign finance, and keys to the capitol dome, although generally relating to statewide elected officials, were not germane to the original stated purpose of "*contracts for purchasing, printing, and services* for statewide elected officials." *Id.* at 386 (emphasis added).

Similarly, in *Missouri Association of Club Executives*, the bill originally purported to specifically enact "four new sections related to intoxication-related traffic offenses, with penalty provisions." 208 S.W.3d at 887 (emphasis omitted). Although one of the amendments was broadly alcohol-related, such as prohibiting the sale of alcohol to minors, this Court severed this provision, finding it was not germane to the original purpose relating to "intoxication-related traffic offenses." *Id.* at 888 (emphasis omitted).

In *Hammerschmidt*, this Court severed amendments to the bill that were not germane to "elections." 877 S.W.2d at 103. Although the severed portions of the bill required voter approval of a proposition through *an election*, the original purpose of the bill was to "amend laws relating to elections," while the practical effect of the severed provision "was to authorize a new form of county governance previously unknown in Missouri." *Id.* This

19

Court found "[t]he election provisions contained in the amendment served no purpose beyond furthering the adoption of this new form of county governance." *Id.* In other words, the amendment did not purport to amend the preexisting election laws. *Id.*

SB 26's original purpose was far more general than the above-cited cases and cannot be limited to mandate a determination that SB 26 violated article III, section 21. *See Stroh Brewery Co. v. State*, 954 S.W.2d 323, 326 (Mo. banc 1997).[14] Each of SB 26's provision relates to this general purpose of public safety, consistent with the provision of the bill as introduced and as expressed in the Missouri Constitution. The circuit court did not err in entering judgment on the pleadings in the State's favor because SB 26 did not violate the original purpose of the bill in violation of article III, section 21.

### *Point III – Article VI, Section 22: Additional Duties*

Appellants contend the circuit court erred in sustaining the State's motion for judgment on the pleadings because Appellants sufficiently alleged that SB 26 violates article VI, section 22 by affixing additional duties on charter city officials, including the city counselor, the police commissioner, internal affairs investigators, and the civil service commission and their staff. Specifically, Appellants argue the city counselor is tasked with the additional duties of defending civil lawsuits against police officer employees it may not have undertaken otherwise and defending the City's employment decisions at due process

---

[14] This is not to say the legislature may describe the purpose of the bill "so broadly that the phrase becomes meaningless." *Hammerschmidt*, 877 S.W.2d at 102. Instead, when the stated purpose is overly general and amorphous and a clear title challenge has not been raised, this Court may determine a bill's narrower purpose by looking to the Missouri Constitution and/or the original provisions included in the bill. *Carmack*, 945 S.W.2d at 960.

hearings for law enforcement officers. Section 590.502.7, .9. Appellants additionally argue the civil service commission is tasked with the additional duty of hearing appeals that were not previously permitted and is required to disclose evidence and information to officers prior to disciplinary hearings. Section 590.502.3(3). Finally, Appellants argue the internal affairs investigators are tasked with additional duties because they are now required to provide written notice to the subject of an investigation within a prescribed period of time and to complete investigations within 90 days. Section 590.502.2(1), (11).

Charter cities are not granted limitless power. *See* Mo. Const. art. VI, sec. 19(a) (limiting the charter city's power to establish ordinances consistent with the constitution and "not limited or denied" by state statute). The constitution expressly prohibits the legislature, however, from "creating or fixing the powers, duties or compensation of any municipal office or employment" within charter cities. Mo. Const. art. VI, sec. 22. "In other words, the General Assembly may not tell the officers of a charter city what they must do; it may, however, limit the powers a charter city may exercise through its officers." *City of Springfield v. Goff*, 918 S.W.2d 786, 789 (Mo. banc 1996).

SB 26 does not violate article VI, section 22. It neither creates a municipal office or employment, nor fixes the powers, duties, or compensation of a municipal office or employment. Rather, SB 26 places limitations and procedures upon the exercise of powers by the governing bodies of the municipalities. *See id.* SB 26 creates a baseline procedure for a law enforcement officer's administrative investigation by requiring written notice be provided to any law enforcement officer under administrative investigation as well as

21

establishing a baseline procedure for the employers to follow in the event of a civil suit arising against the law enforcement officer.

In *Goff*, this Court held a statute establishing the procedure for a charter city to amend regulations relating to zoning did not violate article VI, section 22 because "the constitution does not prohibit the legislature from establishing procedures by which charter cities may make substantive determinations regarding the uses of private property through zoning regulation." *Id.*[15] This Court in *Goff* identified the procedural statute as one that "places limitations upon the exercise of powers by the governing bodies of municipalities." *Id.* Similarly, the constitution does not prohibit the legislature from establishing procedures by which charter cities may conduct disciplinary and legal proceedings. These procedures establishing baseline requirements for disciplinary and legal proceedings demonstrate a limitation on the exercise of powers, rather than an assignment of duties, and are permitted under the constitution.

---

[15] The statute at issue in *Goff* stated:
> Such regulations, restrictions, and boundaries may from time to time be amended, supplemented, changed, modified or repealed. In case, however, of a protest against such change duly signed and acknowledged by the owners of thirty percent or more, either of the areas of the land (exclusive of streets and alleys) included in such proposed change or within an area determined by lines drawn parallel to and one hundred and eighty-five feet distant from the boundaries of the district proposed to be changed, such amendment *shall not become effective except by the favorable vote of two-thirds of all the members of the legislative body of such municipality*.

Section 89.060, RSMo 1994 (emphasis added). The city-appellant ("Springfield") in *Goff* argued, as the City does here, that this statute placed additional duties upon Springfield's legislative body by requiring it to amend zoning regulations in this way. *Goff*, 918 S.W.2d at 788. Springfield argued this statute was "an attempt to define the powers of municipal officers." *Id.*

Therefore, the circuit court did not err in entering judgment on the pleadings in the State's favor because SB 26 did not impose additional duties in violation of article VI, section 22.

### Point IV – Article III, Section 38(a): Use of Public Funds

Appellants contend the circuit court erred in sustaining the State's motion for judgment on the pleadings because Appellants sufficiently alleged SB 26 improperly grants public funds to private persons for a primarily private purpose in violation of article III, section 38(a).

Article III, section 38(a), in relevant part, states: "The general assembly shall have no power to grant public money or property, or lend or authorize the lending of public credit, to any private person, association or corporation."  In evaluating a challenge under this section, this Court must first determine whether there has been a grant of *public* money to *private* persons.  Mo. Const. art. III, sec. 38(a).  This inquiry requires three preliminary findings: (1) whether there has been a grant of money or property; (2) whether the money or property is public; and (3) whether it was granted to private persons.  *Id.*  If there has been such a grant, this Court will determine whether the grant serves a public purpose.  *Id.*

There is no constitutional violation when the grant serves a public purpose.  *Fust v. Att'y Gen. of Mo.*, 947 S.W.2d 424, 429 (Mo. banc 1997).  "In determining whether there is a sufficient public purpose behind a grant of public money, Missouri has used the 'primary effect' test."  *Curchin v. Mo. Indus. Dev. Bd.*, 722 S.W.2d 930, 934 (Mo. banc 1987).

> If the primary object of a public expenditure is to subserve a public municipal purpose, the expenditure is legal, notwithstanding it also involves as an incident an expense, which, standing alone, would not be lawful. But if the primary object

23

is not to subserve a public municipal purpose, but to promote some private end, the expense is illegal, even though it may incidentally serve some public purpose.

*Id.* (emphasis omitted). In determining the primary effect, the stated purpose of the legislature is not dispositive. *Id.* "Rather, [this Court] must make the determination based upon the history and purpose of Article III, Section 38(a) of the Missouri Constitution and upon cases in which [this Court has] applied that constitutional provision." *Id.*

SB 26's provision at issue states:

Employers shall defend and indemnify law enforcement officers from and against civil claims made against them in their official and individual capacities if the alleged conduct arose in the course and scope of their obligations and duties as law enforcement officers. *This includes any actions taken off duty if such actions were taken under color of law*.

Section 590.502.7 (emphasis added). Appellants take issue with the inclusion of off-duty law enforcement officers in this section and argue this provision grants public funds to private persons in two ways: first, the City is required to defend law enforcement officers in civil claims arising from off-duty actions; second, the City is required to indemnify law enforcement officers for such off-duty actions. This Court addresses each of Appellants' arguments in turn.

*Defending Law Enforcement Officers*

The State denies SB 26 provides for a grant of money because the requirement to defend law enforcement officers in civil claims made against them for actions taken under the color of law does not require money to change hands, *i.e.*, grants of resources and services are distinct from grants of money or property prohibited by article III, section 38(a). Appellants argue the City is forced to expend "money or property" in the form of the City employee's

24

time and resources utilized in defending civil lawsuits against specific employees. Even if the legal representation of off-duty officers is a grant of public funds or property, however, there is no constitutional violation when the grant primarily serves a public purpose. *Fust*, 947 S.W.2d at 429.

The State contends the primary purpose of SB 26's provision requiring the City to defend law enforcement officers is to "mak[e] employment as a police officer—an already risky profession—a little less risky" and prevent current and prospective law enforcement officers from leaving or being deterred from a career in law enforcement for fear of shouldering the responsibility of potential litigation. Additionally, as the circuit court noted, this provision serves a public purpose in that it "incentivizes police officers to *act* to protect the public rather than turn a blind eye." Therefore, the Court finds the legal defense of law enforcement officers required under SB 26 serves a public purpose and does not violate article III, section 38(a).

*Indemnifying Law Enforcement Officers*

The parties concede that the provision requiring the indemnification of law enforcement officers provides for a grant of public funds to private persons. The dispositive issue is whether indemnifying law enforcement officers for civil claims arising from their off-duty actions taken under the color of law is a grant that primarily serves a public purpose. This Court finds indemnification of law enforcement officers for actions taken under color of law, even if off-duty, serves a primarily public purpose for the same reasons that defending law enforcement officers serves a primarily public purpose.

25

Therefore, the circuit court did not err in entering judgment on the pleadings in the State's favor because SB 26 does not violate the public funds doctrine in article III, section 38(a).

### Point V – Article I, Section 2: Equal Protection

Appellants contend the circuit court erred in sustaining the State's motion for judgment on the pleadings because Appellants sufficiently alleged SB 26 impermissibly and arbitrarily creates two classes of similarly situated employees subject to different due process rights in violation of article I, section 2. Appellants specifically argue the statute treats similarly situated city employees differently by providing heightened due process protections for law enforcement officers as well as by *requiring* the City to defend and indemnify law enforcement officers in certain situations.

The equal protection clause of the Missouri Constitution provides that "all persons are created equal and are entitled to equal rights and opportunity under the law." Mo. Const. art. I, sec. 2. In considering whether a statute violates this clause, generally this Court first "determines whether the statute contains a classification that operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution." *Ambers-Phillips v. SSM DePaul Health Ctr.*, 459 S.W.3d 901, 909 (Mo. banc 2015) (internal quotation marks omitted). Otherwise, this Court presumes the statute is constitutional and applies a rational basis test under which "the statute will be [held] valid as long as it bears a reasonable relationship to a legitimate state purpose." *Id.* (alteration in original) (internal quotation marks omitted). The threshold requirement triggering an equal protection analysis, however, is evidence that the challenging party is similarly situated to

26

those whom they allege receive different treatment. *Coyne v. Edwards*, 395 S.W.3d 509, 519 (Mo. banc 2013). "The similarly situated standard is a rigorous one requiring proof that the two classes were similarly situated in all relevant aspects." *Id.* (internal quotation marks omitted)

Law enforcement officers and other city employees, including correctional officers, are not similarly situated.[16] Section 556.061(32) defines "law enforcement officer" as "any public servant having both the power and duty to make arrests for violations of the laws of this state[.]" Section 590.502.1(5) additionally defines "law enforcement officer" as "any commissioned peace officer with the power to arrest for a violation of the criminal code who is employed by any unit of the state or any county, charter county, city, charter city, municipality, district, college, university, or any other political subdivision or is employed by the board of police commissioners[.]" Both of these definitions are included under Title XXXVIII, titled "Crimes and Punishment; Peace Officers and Public Defenders." In contrast, correctional institutions are discussed under Title XIII, titled "Correctional and Penal Institutions." Although correctional officers are not currently defined by statute, some powers entrusted to correctional employees are. *See* secs. 217.160-.285. Regarding the power to arrest, section 217.280.2 allows the director of the department of corrections to authorize

---

[16] Even if other public safety employees, such as correctional officers, are similarly situated to law enforcement officers, "a legislative classification assailed on equal protection grounds is not rendered arbitrary or invidious merely because it is under-inclusive." *City of St. Louis v. Liberman*, 547 S.W.2d 452, 458 (Mo. banc 1977). "[T]here is no constitutional requirement that regulation must reach every class to which it might be applied; that the legislature must regulate all or none." *Id.* Rather, the political subdivision is "free to regulate one step at a time, recognizing degrees of harm and addressing itself to phases of a problem which presently seem most acute to the legislative mind." *Id.*

certain employees the limited power to arrest escaped offenders and any individuals who may be aiding and abetting an escape. "This statute does not mention corrections officers, nor does it expressly give a corrections officer the same authority and powers as law enforcement officers to make arrests for violations of state laws under section 556.061[(32)]." *State v. Sharp*, 341 S.W.3d 834, 844 (Mo. App. 2011). Probation officers similarly have limited power to arrest. Section 217.722.1. Therefore, this Court finds that law enforcement officers – who have wider power to arrest and discretion when engaging with the public – are not similarly situated to other city employees.

Even if the city employees are similarly situated, SB 26 does not operate to disadvantage a suspect class, nor does it impinge upon a fundamental right. Therefore, the statute will be upheld if the classification bears some rational relationship to a legitimate state purpose. *State v. Young*, 362 S.W.3d 386, 397 (Mo. banc 2012).

SB 26's heightened due process protections for law enforcement officers has a rational basis under the law. As previously discussed, one purpose in the legislature's establishment of heightened due process protections is to recruit and retain law enforcement officers. Maintaining law enforcement agencies is a legitimate state purpose, particularly in the midst of a "staffing crisis" wherein many believe intense public scrutiny and bad public image are major contributors.[17] Law enforcement officers are subject to heightened levels of scrutiny

---

[17] *See, e.g.*, Ciara Tate, *Mid-Missouri Law Enforcement Agencies Struggle to Recruit and Retain Staff*, KRCG13 (Mar. 6, 2023), https://krcgtv.com/news/local/law-enforcement-agencies-struggle-to-recruit-and-retain-staff-callaway-county-osage-beach-cole-county-ashland-police-department; Andy Alcock, *As Homicide Numbers Increase, Staffing for the Kansas City Police Department Is at a Historic Low*, KMBC News (June 7, 2023), https://www.kmbc.com/article/as-homicide-numbers-increase-staffing-for-the-kansas-city-

because of the public nature of their jobs.[18]  This is not to say this level of scrutiny is unwarranted.  Rather, the legislature's recognition of the intense public scrutiny law enforcement officers face and the need to retain and recruit qualified law enforcement officers demonstrates a rational relationship to heightened due process standards for such officers.

Therefore, SB 26 does not impermissibly and arbitrarily create two classes of similarly situated employees subject to different due process rights in violation of article I, section 2, and the circuit court did not err in entering judgment on the pleadings in the State's favor.

### Point VI – Substantial Compliance

In their final point, Appellants alternatively allege that, if this Court finds the circuit court did not err in finding SB 26 constitutional, the circuit court erred in sustaining the State's motion for judgment on the pleadings based on justiciability.  Any party seeking declaratory relief must establish the lack of adequate remedy at law.  *City of St. Louis*, 643 S.W.3d at 301.  Because the judgment is reversed in part and remanded to the circuit court to

---

police-department-is-at-a-historic-low/44121488#; Joey Schneider, *St. Louis Police Force around 20% Understaffed*, Fox2Now (May 11, 2023), https://fox2now.com/news/missouri/st-louis-police-force-around-20-percent-understaffed/; *see also Law Enforcement Jobs*, Mo. Dep' of Pub. Safety, https://dps.mo.gov/dir/programs/post/le-jobs.php (containing numerous job listings for police officers as of November 15, 2023).

[18] *See, e.g.*, John Kelly and Mark Nichols, *We Found 85,000 Cops Who've Been Investigated for Misconduct. Now You Can Read Their Records*, USA Today (Apr. 24, 2019), https://www.usatoday.com/in-depth/news/investigations/2019/04/24/usa-today-revealing-misconduct-records-police-cops/3223984002/; Eric Westervelt, *Cops Say Low Morale and Department Scrutiny Are Driving Them Away from the Job*, NPR (June 24, 2021), https://www.npr.org/2021/06/24/1009578809/cops-say-low-morale-and-department-scrutiny-are-driving-them-away-from-the-job; *A Crisis for Law Enforcement*, Int'l Ass'n of Chiefs of Police, at 4, https://www.theiacp.org/sites/default/files/239416_IACP_RecruitmentBR_HR_0.pdf.

determine whether SB 26 violates the Hancock Amendment, Appellants have an adequate remedy at law, and this Court need not address this alternative argument.

## Conclusion

The judgment of the circuit court as to Appellants' Point II regarding SB 26's unfunded mandate is reversed, and the case is remanded to the circuit court for further proceedings consistent with this opinion. The circuit court's judgment is affirmed in all other respects.

_____
KELLY C. BRONIEC, JUDGE

Russell, C.J., Powell, Fischer,
Ransom and Wilson, JJ., concur.
Gooch, J., not participating.